**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

|  |  |  |
|---|---|---|
| THANH THACH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Case No. 3:14-cv-00070-HEH |
| | ) | |
| v. | ) | |
| | ) | |
| EQUIFAX INFORMATION SERVICES, LLC, *et al.*, | ) | Judge:  The Hon. Henry E. Hudson |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DEFENDANT EXPERIAN INFORMATION SOLUTIONS, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

PROCEDURAL HISTORY ................................................................................................. 1

STATEMENT OF UNDISPUTED MATERIAL FACTS ............................................... 3

STANDARD OF REVIEW ................................................................................................. 6

ARGUMENT ........................................................................................................................ 7

I.     Plaintiff's § 1681e(b) Claim (Count One) Should Be Dismissed Because
       Experian's Policies and Procedures To Ensure Accurate Credit Reporting Are
       Reasonable And Fully Comply With The FCRA ............................................................ 7

II.    Plaintiff's § 1681i(a) Claims (Counts Two-Five) Cannot Survive Summary
       Judgment Because Experian Reasonably Reinvestigated Plaintiff's Disputes ............... 11

III.   Experian Is Entitled To Summary Judgment Because Plaintiff Cannot Prove Her
       Damages ...................................................................................................................... 16

       A.     Plaintiff Has Suffered No Damages ................................................................... 16

       B.     Whatever Damages Plaintiff May Have Suffered Were Not Caused By
              Experian ........................................................................................................... 19

CONCLUSION .................................................................................................................... 22

## TABLE OF AUTHORITIES

**Page**

CASES

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986)....................................................................................................6

*Anderson v. Trans Union,*
    367 F. Supp. 2d 1225(W.D. Wis. 2005) ...............................................................11

*Anderson v. Trans Union,*
    405 F. Supp. 2d 977 (W.D. Wis. 2005) ............................................................9, 18

*Boothe v. TRW Credit Data,*
    768 F. Supp. 434 (S.D.N.Y. 1991) .......................................................................11

*Cahlin v. General Motors Acceptance Corp.,*
    936 F.2d 1151 (11th Cir. 1991) ..........................................................................8, 9

*Casella v. Equifax Credit Info. Servs.,*
    56 F.3d 469 (2d Cir. 1995)....................................................................................19

*Dalton v. Capital Associated Indus., Inc.,*
    257 F.3d 409 (4th Cir. 2001) .................................................................................7

*Davis v. Equifax Info. Servs.,*
    346 F. Supp. 2d 1164 (N.D. Ala. 2004).................................................................11

*Doe v. Chao,*
    306 F.3d 170 (4th Cir. 2002) ..........................................................................16, 17

*Enwonwu v. Trans Union, LLC,*
    164 Fed. App'x. 914 (11th Cir. 2006) ....................................................................8

*Evans v. Credit Bureau,*
    904 F. Supp. 123 (W.D.N.Y. 1995) .....................................................................16

*Henson v. CSC Credit Services,*
    29 F.3d 280 (7th Cir. 1994) .................................................................................18

*Hinton v. Trans Union, LLC,*
    654 F. Supp. 2d 440 (E.D. Va. 2009) ....................................................................9

*Jackson v. Equifax Info. Servs.,*
    167 Fed. App'x. 144 (11th Cir. 2006) ..............................................................8, 16

*Matise v. Trans Union Corp.*,
  No. 96-3353, 1998 U.S. Dist. LEXIS 19775 (N.D. Tex. Nov. 30, 1998) ............................... 16

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) ............................................................................................ 6

*McCelland v. Experian Info. Solutions, Inc.*,
  2006 WL 2191973 (N.D. Ill. July 28, 2006) ............................................................. 7

*News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*,
  597 F.3d 570 (4th Cir. 2010) ................................................................................ 6

*Ogbon v. Beneficial Credit Servs., Inc.*,
  No. 1:10-cv-03760-PAE, 2013 WL 1430467 (S.D.N.Y. Apr. 08, 2013) ....................... 12

*Petty v. Equifax Credit Info. Servs.*,
  No. 10-694, 2010 WL 4183542 (D. Md. Oct. 25, 2010) ........................................... 20

*Podell v. Citicorp Diners Club, Inc.*,
  112 F.3d 98 (2d Cir. 1997) ................................................................................... 19

*Ruffin-Thompkins v. Experian Info. Solutions, Inc.*,
  422 F.3d 603 (7th Cir. 2005) ................................................................................ 15

*Safeco Ins. Co. of Amer. v. Burr*,
  551 U.S. 47 (2007) ............................................................................................ 17

*Sarver v. Experian Info. Solutions, Inc.*,
  299 F. Supp. 2d 875 (N.D. Ill. 2004) ...................................................................... 9

*Sarver v. Experian Information Solutions, Inc.*,
  390 F.3d 969 (7th Cir. 2004) ................................................................................ 15

*Smith v. Auto Mashers, Inc.*,
  85 F. Supp. 2d 638 (W.D. Va. 2000) ...................................................................... 8

*Zotta v. Nationscredit Fin. Serv. Corp.*,
  297 F. Supp. 2d 1196 (E.D. Mo. 2003) ................................................................... 16

**STATUTES**

15 U.S.C. § 1681e(b) ............................................................................................. 7, 8, 9

15 U.S.C. § 1681i(a)(3)(A) .................................................................................... 12

15 U.S.C. § 1681i(a)(5)(A) .................................................................................... 14

15 U.S.C. §§ 1681n-1681o ................................................................................... 15

Fair Credit Reporting Act ...................................................................................................18

Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* .....................................................1

FCRA ...................................................................................................................... passim

§ 1681i(a) of the FCRA ............................................................................7, 9, 10, 14

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56(a) .........................................................................................................6

FEDERAL TRADE COMMISSION, *40 Years of Experience With the Fair Credit
        Reporting Act: An FTC Staff Report with Summary of Interpretations* at 77
        (July 2011), *available at* http://www.ftc.gov/reports/40-years-experience-fair-
        credit-reporting-act-ftc-staff-report-summary-interpretations* ...............................12

*FTC Commentary on the Fair Credit Reporting Act*, 55 Fed. Reg. 18823.............................11, 14

## INTRODUCTION

Paper thin. That would be the best way to describe Plaintiff's charges against Experian Information Solutions, Inc. ("Experian") for violating the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* Plaintiff specifically alleges that Experian failed to "reasonably ensure the maximum possible accuracy of her credit reports" and to "investigate and correct [her] credit files when she disputed the inaccuracies," which "reduced [her] credit scores and prohibited her from obtaining a loan." (Compl., ECF No. 1, ¶¶ 4, 35.) But such allegations are unsupported, and simply cannot provide an avenue for relief.

Plaintiff's five FCRA counts against Experian cannot survive summary judgment for three reasons. *First*, Experian's credit reporting practices and procedures were fully compliant with § 1681e(b). *Second*, Experian's reinvestigation of Plaintiff's disputes was reasonable at all times, given the information it had regarding Plaintiff's claims, as required per § 1681i(a). *Third*, Plaintiff cannot prove any of her damages—and even if she could, any adverse action she experienced as a result of alleged reporting inaccuracies transpired prior to when she notified Experian of her disputes in January 2009. Experian, therefore, is entitled to judgment as a matter of law against all of Plaintiff's Counts. No reasonable juror could find otherwise.

Accordingly, Defendant Experian moves for summary judgment on each of Plaintiff's claims (Counts One through Five) that Experian violated the FCRA.

## PROCEDURAL HISTORY

On January 31, 2014, Plaintiff filed an individual Complaint against two credit reporting agencies—namely, Equifax and Experian—and five consumer data furnishers—namely, Bryant State Bank, Comenity Bank, Credit One Bank, First Premier Bank, and LVNV Funding—in the

1

Richmond Division of the United States District Court for the Eastern District of Virginia, claiming that they were responsible for "derogatory and mismatched sets of credit information" on her credit reports, which "severely reduced [her] credit scores and prohibited her from obtaining a loan." (*See* Compl., ECF No. 1, ¶¶ 4, 5, 35.)

Her Complaint states that she identified 19 allegedly inaccurate tradelines on her Equifax credit report, and she identified 10 allegedly inaccurate trade lines on her Experian credit report. (*See id.* at ¶¶ 20-21.) According to Plaintiff, none of these trade lines belong to her. (*Id.* at ¶ 23.) Further, she contends that Equifax and Experian failed to "to reasonably ensure the maximum possible accuracy of her credit reports and to investigate and correct [her] credit files when she disputed the inaccuracies." (*Id.* at ¶ 4.) She also claims, among other things, that Experian's "[i]nvestigation [r]esults . . . failed to indicate the status of 9 of the accounts" that she disputed in her first letter of January 2013. (*Id.* at ¶ 34.) Plaintiff seeks actual damages, statutory damages, punitive damages, costs, and attorneys' fees from Experian. (*Id.* at ¶¶ 34, 61, 66, 71, 76, 81.)

On March 27, 2014, the Court entered a Scheduling Order, and the discovery phase of this litigation commenced thereafter. (ECF No. 27.) Experian filed an Answer to the Complaint on April 4, 2014, denying any liability on Plaintiff's claims. (ECF No. 28.)

On May 1, 2014, this Court had a pretrial conference with the parties and entered an order scheduling trial for October 27, 2014. (ECF No. 51 & 52.)

Equifax Information Services, LLC ("Equifax") and Experian are the only remaining defendants in this matter. The five defendant data furnishers have reached settlement agreements with Plaintiff, and have been dismissed from the action.

Discovery closed on September 2, 2014.  (ECF No. 27.)

## STATEMENT OF UNDISPUTED MATERIAL FACTS

The undisputed material facts are as follows:

1.      Plaintiff's full name is "Thanh Cham Thi Thach".  (Ex. A, Pl.'s Answer to Exp. Interrog. No. 1.)  The last four digits of her social are "-1850".  (*Id.*)  She immigrated to America with her mother in 1990 and is a U.S. citizen.  (Ex. B, Pl.'s Dep. Tr. at 41.).  Plaintiff has been a hair stylist at the Grooming Lounge since 2005.  (Ex. A, Pl.'s Answer to Exp. Interrog. No. 1.)

2.      For the last seven years, plaintiff has lived with her mother at 2926 Monticello Drive, Falls Church, VA 22042, located within the Kingsley Commons Townhouses complex.  (Ex. C, Pl.'s Dispute Letters; Ex. B, Pl.'s Dep. Tr. at 39; 188; Ex. A, Pl.'s Answer to Exp.'s Interrog. No. 1.)

3.      On or around September 8, 2009, Plaintiff requested a credit disclosure from Experian.  (*See* Ex. D, Experian's Consumer Discl. Produc., at EXPTHACH_0000245-62.)  Pursuant to that request, Experian mailed her a disclosure at her present addresssaround the same time.  (*Id.*) This request contained several of the accounts Plaintiff later disputed in her January 29, 2013 dispute letter to  Experian.  (*Compare* Exs. A *with* Ex. B.)

4.      Thereafter, in October 2009, Plaintiff also requested that Experian place a fraud alert on her credit file.  (*See* Ex. D, Experian's Consumer Discl. Produc., at EXPTHACH_0000267-70.)  Experian did so, mailing a confirmation of the action it had taken to her present address.  (*See id.*)

5.      Plaintiff claims she sought to obtain a mortgage from two places, C & F Mortgage Corporation, and McLean Mortgage corporation around August 2012.  Plaintiff claimed that she applied for such a mortgage, but the evidence she has supplied does not demonstrate that, she ever completed the application process, (*see* Exs. C & F.) It was at this time that she claimed learned about her alleged inaccuracy.  (*See* Compl., ECF No. 1, at ¶19.)

6.      Plaintiff claims she was denied a $100K mortgage due to alleged inaccuracies on her Experian credit file, (see Ex. A, Answer to Exp. Interrog. No. 21), but the evidence Plaintiff has produced does not demonstrate that she ever completed the loan application process with either C & F Mortgage or McLean Mortgage.  (*See* Exs. C & F.)

7.      Moreover, as a result of her alleged mortgage denials, Plaintiff claims that she has experienced mental and emotional distress, but has never seen a treating physician or received been prescribed medications for these non-economic hardships.  (*See* Ex. D.)

8.      On January 29, 2013,  Plaintiff sent a dispute letter to Experian challenging 13 accounts on her credit report as not belonging to her.  (Compl., ECF No. 1 at ¶ 34.)

9.      Upon receipt of this dispute letter in early February 2013, and sent a disclosure out in March 2014, stating that 11 of the 13 accounts were no longer on her disclosure.  (*See* Ex. D.)  However, Experian's A/CDV was returned verified on two First Premier accounts, and thus, remained thereon on her disclosure—as both Experian and First Premier Bank had a 100% match on Plaintiff's  first and last name, date of birth and full social.  (*See* Exs. E & F.)

12.     On June 3, 2013,  Plaintiff sent a second dispute letter, in which she disputed only the two First Premier Bank accounts, but provided no new evidence regarding the alleged account ownership inaccuracies.  (*See* Ex. C.)

13.     Plaintiff alleges that Experian mixed her credit information, primarily with her mother, (ECF No. 1, ¶ 3), who apparently has a similar name and social security number. Plaintiff alleges that she discovered the alleged mixed file in August 2012 when she was denied a mortgage by McLean Mortgage Company based on derogatory information on her credit report.

14.     Experian's records do not show that Plaintiff's file was ever mixed with her mother or with anyone else on the First Premier Bank accounts.  (*See* Exs. D & E.)

15.     First Premier Bank also provided an address for Plaintiff that appeared on Plaintiff's credit disclosure.  (*See* Exs. D-F.)  Notably, Plaintiff never disputed that address.  (*See* Ex. C.)

16.     First Premier Bank instructed Experian to delete the two disputed accounts on May 2014, around the same time that First Premier Bank settled out of this case.  (*See* Ex. G) After receiving the Complaint, Experian did a post-litigation reinvestigation of the two First Premier Bank accounts.

17.     Plaintiff testified that she never authorized anyone to apply or obtain credit in her name, and has had no contact with First Premier Bank prior to this litigation.  (*See* Ex. B, Pl.'s Dep. Tr. at 180-205.)

18.     Plaintiff does not she believe that she is the victim of fraud or identity theft.  (Ex. B, Pl.'s Dep. Tr. at 190-200.)

The uncontroverted record in this matter demonstrates that Experian maintained the maximum accuracy of Plaintiff's credit disclosure and conducted a reasonable reinvestigation based on a 100% match between the information Experian maintained in its system and the information First Premier Bank reported to Experian as a part of Experian's reinvestigation.

## STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make an adequate showing on an essential element for which it has the burden of proof at trial." *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). In this case, Plaintiff has the burden of proof as to all of its FCRA claims against Experian.

"[T]he mere existence of *some* alleged factual dispute . . . will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis added). "Only disputes over facts that might affect the outcome of the [litigation] . . . will properly preclude the entry of summary judgment." *Id*. at 248. Once the moving party shows there is no genuine issue of material fact, the non-moving party then "must come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation omitted).

**ARGUMENT**

Experian fully complied with the FCRA as to Plaintiff's disputes.  There is no genuine

issue of material fact here regarding whether Experian satisfied its FCRA obligations under 15

U.S.C. § 1681e(b) (duty to assure maximum possible accuracy of credit reports) and under

§ 1681i(a) (duty to conduct reasonable reinvestigation).  No reasonable jury could determine

otherwise.  Experian is entitled to summary judgment.

But even if the Court finds that some material fact issue related to Plaintiff's § 1681e(b)

and § 1681i(a) claims exists, Plaintiff still has failed to demonstrate she suffered any damages.

The adverse actions she complains of took place prior to Plaintiff providing notice to Experian of

any alleged inaccuracies and prior to any obligation arising for Experian to conduct a

reinvestigation.  Additionally, she cannot prove that her purported damages were caused by

Experian's conduct.  Accordingly, the Court should grant Experian's motion for summary

judgment.

I.      **Plaintiff's § 1681e(b) Claim (Count One) Should Be Dismissed Because Experian's
        Policies and Procedures To Ensure Accurate Credit Reporting Are Reasonable
        And Fully Comply With The FCRA**

Experian incorporates herein by reference Equifax's discussion of Plaintiff's § 1681e(b)

claims in its Motion for Summary Judgment memorandum.  In addition, Experian submits the

following:

In order to state a *prima facie* case under 15 U.S.C. § 1681e(b), a plaintiff must prove the

following elements:  (1) that there is in fact an inaccuracy in his or her credit report; (2) that the

consumer reporting agency did not utilize reasonable procedures to ensure the accuracy of the

information; (3) damages to Plaintiff; and (4) proximate cause.  *See, e.g.*, *Dalton v. Capital*

*Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001) (for elements (1) and (2)); *McCelland v. Experian Info. Solutions, Inc.*, 2006 WL 2191973, *2 (N.D. Ill. July 28, 2006) (for all four elements); *Smith v. Auto Mashers, Inc.*, 85 F. Supp. 2d 638, 640-41 (W.D. Va. 2000) (same).

Although the question of whether a credit reporting agency followed reasonable procedures pursuant § 1681e(b) is usually a question for the jury, where, as here, "the reasonableness of defendant's procedures [is] beyond question," summary judgment is appropriate. *Anderson v. Trans Union*, 405 F. Supp. 2d 977, 984 (W.D. Wis. 2005); *Sarver v. Experian Info. Solutions, Inc.*, 299 F. Supp. 2d 875, 877 (N.D. Ill. 2004). As discussed below, the reasonableness of Experian's reporting procedures cannot be contested. Experian's motion for summary judgment on the § 1681e(b) claims should be granted.

Plaintiff contends that her file was "mixed." *See Price v. Trans Union, LLC*, 839 F. Supp. 2d 785, 790, 2012 BL 247041, 2 (E.D. Pa. 2012) ("When a potential creditor enters identifying information for an individual the . . . . a [credit reporting agency's]matching logic combines all files that meet the matching criteria and, thereafter, maintains only one file with the information. Because exact matches are not required, two files may mix because the two individuals represented by the file have common addresses, last names, social security numbers, etc. When files from different individuals mix, a 'mixed file' is created."); *see Howley v. Experian Info. Solutions, Inc.*, 813 F. Supp. 2d 629, 635-36, 2011 BL 246109, 5 (D.N.J. 2011) (explaining mixed files in consumer reporting). There are no facts that would prove that

Plaintiff's file was mixed with any other consumer or individual, including her mother, (*see* Compl., ECF No. 1 at ¶3.).[1]

With respect to the two accounts primarily at issue in this case,  Experian's and First Premier Bank's information for Plaintiff's first and last name, date of birth, and full social security number were a one hundred percent (100%) match on both First Premier Bank accounts, as established by the A/CDV responses.  (Ex. E & F, First Premier A/CDV Responses.)  While other uncontroverted documentary evidence demonstrates that Plaintiff's sister Mytrand Thach (a/k/a Thach Thi My Trang) made payments on the First Premier Bank account, *see*  (Ex. H.), there is nothing in the record that would indicate that The First Premier Bank accounts were mixed with Myrtrand Thach.  Other than entertaining the possibility of identity theft or consumer fraud, Plaintiff does not have any proof to refute the fact that there was not a mix here between her file and that of someone else, given the complete match on three of her unique personal identifiers.

This inability to prove any material inaccuracy on her Experian credit disclosure substantially vitiates her § 1681e(b).  Indeed, courts have treated the inability to substantiate this threshold element as fatal to the claim, *see Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991) (holding that the text of § 1681e(b) "implicitly requires that a consumer must present evidence tending to show that a [CRA] prepared a report containing 'inaccurate' information" in order to sustain a claim; but, if the consumer presents no such evidence, then the court need not "inquire further as to the reasonableness of the procedures

---

[1]  For instance, Plaintiff's file did not contain any accounts linked to any other Social Security numbers.

-9-

adopted by the credit reporting agency."); *see also Jackson v. Equifax Info. Servs.*, 167 Fed. App'x. 144, 146 (11th Cir. 2006) ("[t]o establish a prima facie violation of § 1681e(b), a consumer must present evidence that a credit reporting agency's report was inaccurate."); *Enwonwu v. Trans Union, LLC*, 164 Fed. App'x. 914, 918 (11th Cir. 2006).

Given her inability to overcome a complete match of her first and last name, date of birth, full social security number, or otherwise prove a reporting inaccuracy, each of the remaining elements of her § 1681e(b) claim unravel and fail as a matter of law. For instance, because Plaintiff cannot demonstrate an inaccuracy, Experian's matching and reporting procedures are *per se* "reasonable" and "ensure maximum accuracy;" the second element of her § 1681e(b) fails. *See Cahlin*, 936 F.2d at 1156 (11th Cir. 1991) (no need to further consider reasonableness of procedures element if there is no inaccuracy). Similarly, the third element, damages falls away because the absence of any inaccurate reporting on the two First Premier Bank accounts precludes Plaintiff's claim for damages. This is especially true since Plaintiff never disputed any information on her Experian account until January 2013. Given the absence of any prior dispute, there is no triggering event to assess whether Experian caused plaintiff any damages, the fourth element of an § 1681e(b) claim.

There is no genuine issue of material fact regarding Plaintiff's claim that her credit information was mixed with someone else or was otherwise inaccurate as it relates to the two First Premier Bank accounts. Nothing in Experian's or First Premier Bank documents support this contention. Rather, the uncontroverted documentary evidence reveals a complete match of her first and last name, date of birth, and full social security number between First Premier Bank's reporting and Experian's information that it had on file for Plaintiff.

**II.     Plaintiff's § 1681i(a) Claims (Counts Two-Five) Cannot Survive Summary Judgment Because Experian Reasonably Reinvestigated Plaintiff's Disputes**

Consistent with the FCRA's dispute process requirements, Experian fully complied with the law when it reasonably reinvestigated Plaintiff's alleged reporting inaccuracies.  Under the Act, "a consumer who brings a § 1681i failure to reinvestigate claim must first show that his credit file contains inaccurate or incomplete information."  *See Hinton v. Trans Union, LLC*, 654 F. Supp. 2d 440, 451 (E.D. Va. 2009).

In her Complaint, Plaintiff argues that Experian violated §  1681i(a) by "failing to conduct a reasonable reinvestigation to determine whether the dispute information was inaccurate and to subsequently delete the information from the file" in violation of §  1681i(a)(2) (Count Two); "failing to send to the furnisher all relevant information that it received in Plaintiff's dispute letter" in violation of §  1681i(a)(2) (Count Three); by "failing to review and consider all relevant information that it received in Plaintiff's communications in violation of §  1681i(a)(4) (Count Four); "failing to delete any information that was the subject of Plaintiff's disputes and that was inaccurate or could not be verified" in violation of §  1681i(a)(5) (Count Five).  Given the interrelatedness of these counts, Experian will address them here *en toto*.

Plaintiff's four § 1681i(a) claims all fail as a matter of law because: (1) there was no inaccuracy in the reporting and (2) Experian conducted a reasonable reinvestigation of Plaintiff's disputes.  Concerning the first point, as stated afore, (*see supra* §  I), there was no inaccurate reporting here—and plaintiff cannot prove otherwise.

Concerning the  second point, the Federal Trade Commission ("FTC"), the agency once empowered to enforce the FCRA, has said regarding a consumer reporting agency's reinvestigation obligations that

> [a] consumer reporting agency conducting a reinvestigation must make a good faith effort to determine the accuracy of the disputed item or items. At a minimum, it must check with the original sources or other reliable sources of the disputed information and inform them of the nature of the consumer's dispute. In reinvestigating and attempting to verify a disputed transaction, a consumer reporting agency may rely on the accuracy of a creditor's ledger sheets and need not require the creditor to produce documentation such as the actual signed sales slips.

*FTC Commentary on the Fair Credit Reporting Act*, 55 Fed. Reg. 18823.[2] Furthermore, courts have ruled. *Boothe v. TRW Credit Data*, 768 F. Supp. 434, 438 (S.D.N.Y. 1991) (a CRA complies with the reinvestigation requirements of the FCRA by reinvestigating disputed information with the source of the information to verify that it is accurate). *Anderson v. Trans Union*, 367 F. Supp. 2d 1225, 1233(W.D. Wis. 2005) (identifying cases where there is no duty to go beyond the original source of information because the dispute concerns a matter that the furnisher can be depended upon to verify).

Similarly, in *Davis*, the credit reporting agency conducted a reinvestigation "by contacting the furnishers of the information, notifying them of the nature of the dispute, and asking them to investigate the information currently being reported" and notifying the Plaintiff "what items had been investigated and the results of each investigation" upon receiving a response from the creditor. *Davis v. Equifax Info. Servs.*, 346 F. Supp. 2d 1164, 1171, 1173 (N.D. Ala. 2004).

The undisputed evidence shows that when Plaintiff first contacted Experian in January 2013 about the 13 accounts she claimed were not hers, (Ex. C, Pl.'s Dispute Letters), Experian

---

[2] Generally, enforcement of the FCRA has been transferred to the Bureau of Consumer Financial Protection.

conducted a reasonable reinvestigation by contacting the sources of the information, informing it of the nature of the dispute, asking them to verify certain information, (*see* Exs. D, E, & F), Experian reported back to Plaintiff that several of the disputed accounts were not on her Experian credit file, and that only two accounts currently at issue, the First Premier Bank accounts were returned as verified—matching on Plaintiff's correct first and last name, date of birth, and full social security number.  (*See id.*)  Indeed, Plaintiff even testified to the efficacy of Experian's dispute process.  When asked why her June 3, 2013 dispute letter no longer listed 11 accounts included in her previous dispute letter of January 29, 2013, she said it was because she no longer saw those previous tradelines listed on her March 14, 2013 Experian disclosure.  (*See* Ex. A, Pl.'s Dep. Tr. at 174-85.)

Further, the undisputed evidence also demonstrates that when Experian received Plaintiff's second letter of June 2013 in which she disputed only the two First Premier Bank accounts for the same reasons she disputed them previously. In response, Experian did not reinvestigate the dispute as Plaintiff supplied no new information, and as such, Experian sent Plaintiff a repeat dispute letter.  (*See* Pl.'s Compl., ECF No. 1, 41; Ex. C, Pl.'s Dispute Letters.) This action was reasonable and permitted, and the FCRA is clear on this point: a consumer reporting agency *may* terminate a reinvestigation upon a reasonable determination that the dispute by the consumer is frivolous or irrelevant—"including by reason of a failure by a consumer to provide sufficient information to investigate the disputed information."  15 U.S.C. § 1681i(a)(3)(A); *see, e.g.*, *Ogbon v. Beneficial Credit Servs., Inc.*, No. 1:10-cv-03760-PAE, 2013 WL 1430467, at *8 (S.D.N.Y. Apr. 08, 2013).  This section of the FCRA has long been interpreted to allow credit reporting agencies to decline to reinvestigate repetitive or duplicative disputes.  FEDERAL TRADE COMMISSION, *40 Years of Experience With the Fair Credit Reporting*

-13-

*Act: An FTC Staff Report with Summary of Interpretations* at 77 (July 2011), *available at*

http://www.ftc.gov/reports/40-years-experience-fair-credit-reporting-act-ftc-staff-report-

summary-interpretations (a credit reporting agency "is not required to repeat an investigation that

it has previously conducted simply because the consumer reiterates a dispute about the same item

of information, unless the consumer provides further information indicating that the item is

inaccurate or incomplete, or alleges changed factual circumstances.")  Accordingly, that

Experian did not conduct a second reinvestigation of Plaintiff's disputes in no way compromises

the legitimacy of Experian's first reinvestigation of Plaintiff's dispute or the overall

reasonableness of its reinvestigation procedures.

Moreover, as it specifically relates to Plaintiff's § 1681i(a)(2) claim, Experian contacted

the original source of the information, First Premier Bank, via the A/CDV process.  In processing

Plaintiff's dispute with First Premier Bank, Experian did not include Plaintiff's "handwriting

exemplar, copies of her license, passport, and social security card" (Compl., ECF No. 1, at ¶27.)

This action was reasonable under § 1681(a)(2).  These documents would not provide any

additional "relevant information" that would assist Experian in reinvestigating her dispute of the

First Premier Bank accounts.  Experian already had a match on Plaintiff's key unique personal

identifiers—first and last name, date of birth, and full social security number.  A social security

card with the same information in Experian's file and verified by First premier cannot form the

basis for an § 1681i(a)(2) claim.  Similarly, a license or passport matching the same first and last

name in Experian's system and verified by First Premier Bank would be no more useful.[3]

_____

[3] And given the trend that the vast majority of most banking and credit transactions are
done telephonically or electronically (*e.g.*, online), Plaintiff's handwriting exemplar would also

And although Plaintiff alleges a failure to delete information subject to dispute, under § 1681i(a)(5), Experian's match with First Premier Bank on Plaintiff's key personal identifiers demonstrated that these accounts were indeed hers.  Under the text of the statute, only disputed information that "is found to be inaccurate or <u>cannot be verified</u>" 15 U.S.C. § 1681i(a)(5)(A) (emphasis added). Hence, no liability under this subsection attaches to Experian because First Premier Bank *did verify* these accounts as reporting accurately.  (Ex. E, Experian-First Premier A/CDV Responses; Ex. F, First Premier Bank Produc.)  Plaintiff also failed even to challenge the allegedly inaccurate addresses on her credit report in her January 2013 and June 2013 dispute letters, which her counsel helped her prepare.  (Ex.C, Pl.'s Dispute Letters.)  Indeed, Experian would be hard-pressed to conceive of more ways to reinvestigate the ownership of the disputed First Premier Bank accounts.[4]  The simple truth is that Experian did the best it could, given the information it legally had available to it—and this was sufficient to satisfy its § 1681i(a) obligations.  *See FTC Commentary on the Fair Credit Reporting Act*, 55 Fed. Reg. 18823 ("[a] consumer reporting agency conducting a reinvestigation must make a good faith effort to determine the accuracy of the disputed item or items.")

As such, Experian fully discharged its duty under § 1681i(a) of the FCRA to conduct a reasonable reinvestigation of Plaintiff's disputes.  Accordingly, summary judgment should be granted to Experian on Plaintiff's four § 1681i(a) claims.

---

(continued…)

not provided meaningful assistance to Experian and First Premier Bank in reinvestigating her account ownership disputes.

[4] Even in considering all the evidence it had available, the case of identity theft or consumer fraud would still be highly improbable to detect, given the matches on Plaintiff's three key personal identifiers with that of First Premier Bank's accountholder records.

### III. Experian Is Entitled To Summary Judgment Because Plaintiff Cannot Prove Her Damages

Plaintiff cannot prove any damages at all. And even if she could, there is no evidence that any such hypothetical damages were caused by Experian, rather than her own contributory negligence in not raising her dispute with Experian for nearly four years. This inability to prove causation makes sense—the alleged adverse action was caused by Plaintiff's own withdrawal of her mortgage application, not any information in her Experian credit file. Thus, Plaintiff has not met her burden on a necessary element of her FCRA claim, and Experian is entitled to judgment as a matter of law. *See, e.g.*, *Ruffin-Thompkins v. Experian Info. Solutions, Inc.*, 422 F.3d 603, 610 (7th Cir. 2005); *Sarver v. Experian Information Solutions, Inc.*, 390 F.3d 969, 971 (7th Cir. 2004) (holding that it need not reach the issue of reasonable procedures because plaintiff's claim failed for lack of damages).

#### A. Plaintiff Has Suffered No Damages

A FCRA plaintiff may recover actual damages in the case of a negligent violation, or statutory damages in lieu of actual damages in the case of a willful violation. 15 U.S.C. §§ 1681n-1681o. Here, however, Plaintiff failed to prove either actual damages or willfulness.

***Actual Damages.*** Plaintiff claims to have suffered actual damages, both in the form of the denial of a home mortgage and in the form of "emotional and mental anguish." (*See* Pl.'s Answer to Exp. Interrog. No. 21.) Both claims fail as a matter of law.

With respect to the home mortgage, Experian adopts and incorporates by reference Equifax's discussion of this issue in its Motion for Summary Judgment Memorandum. Simply put, with discovery closed, Plaintiff has adduced no evidence that she was ever denied a mortgage. The only evidence pertaining to a mortgage indicates that Plaintiff did not complete the application process. (*See* Ex. I, C & F Mortgage Produc., at # 001786 ("Ms. Thach did not

proceed with the [mortgage] application process.")).  This document proves that Plaintiff's

claims that she was denied a mortgage are false.[5]   Certainly, none of the documents from the

mortgage company show that the company reviewed, much less relied upon, an Experian credit

report.  (*See id.* at #001776.)   Under the FCRA, Plaintiff cannot receive compensation for an

economic harm that never occurred.[6]

With respect to Plaintiff's asserted non-economic damages, she has failed to meet this

Circuit's demanding standard of proof.  In *Doe v. Chao*, 306 F.3d 170 (4th Cir. 2002), the Fourth

Circuit made clear that to obtain compensation for mental and emotional distress, there needs to

---

[5] For instance, Plaintiff claimed that she lost her opportunity to purchase the house of her choosing, which had a listing price in Maryland of $164,000.  (*See* Ex. B, Pl.'s Dep. Tr. at  51.) She also claims to have driven to the house with her real estate agent, (*see* Pl.'s Dep. Tr. at 50-54); however, she could not tell Experian's counsel her real estate agent's full name or the address of the house that she intended to purchase, (*see* Pl.'s Dep. Tr. at 51-55).  And, there is no evidence that Plaintiff ever submitted a contract, let alone a ratified contract, to purchase the property.

[6] To the extent that Plaintiff claims to have been denied by a second mortgage company, McLean Mortgage Corporation, there is absolutely no evidence to support that Plaintiff even applied for a mortgage, much less that she was denied credit.  Plaintiff relies primarily on a third-party "merge credit report," which combines information from the three major credit reporting agencies.  (*See* Ex. J.)  Such merge credit reports cannot support a claim of actual damages based on reporting inaccuracies.  *See, e.g., Jackson v. Equifax Info. Servs., LLC* , 167 Fed App'x 144, 146-57 (11th Cir. 2006) (affirming grant of summary judgment to Equifax because "[t]he only evidence [plaintiff] submitted to the district court were copies of his Equifax report, a copy of a merge credit report, a copy of the interrogatories he posed to Equifax, and its responses. Although [plaintiff] alleged that he was denied credit, the evidence he offered did not support an inference that allegedly inaccurate information contained in his Equifax report caused the denial of credit.  Accordingly, we affirm the district court's grant of summary judgment"); *Zotta v. Nationscredit Fin. Serv. Corp.*, 297 F. Supp. 2d 1196, 1205 (E.D. Mo. 2003) (granting Experian summary judgment where Plaintiff was unable to show that an Experian credit report was the source of Plaintiff's alleged damage); *Matise v. Trans Union Corp.*, No. 96-3353, 1998 U.S. Dist. LEXIS 19775, at *21-22 (N.D. Tex. Nov. 30, 1998) (defendant CRA not liable for credit denials where grantor relied on another CRA's consumer report); *Evans v. Credit Bureau*, 904 F. Supp. 123, 126 (W.D.N.Y. 1995) (granting summary judgment for a defendant in part because "plaintiff still failed to present affirmative evidence that he was . . . required to pay excessive interest rates because of the alleged incorrect information contained in [defendant's] credit report).

be both "proof of actual injury" (*i.e.*, non-emotional) and a demonstration of "the need for medical, psychological, or psychiatric treatment, the presence of physical symptoms, loss of income, and impact on the plaintiff's conduct and lifestyle" as a result of the alleged distress. *Id.* at 180-81. A plaintiff's own conclusory allegations that she felt "embarrassed," "very upset," "degraded," "devastated," "highly upset," or "suffered a loss of self-esteem," are insufficient to justify such an award. *Id.* (internal citations omitted) Applying *Doe's* standard here—where Plaintiff has <u>never</u> been diagnosed or treated by a doctor, or other accredited medical professional, nor prescribed any medications to treat her alleged symptoms (*see* Ex. B, Pl.'s Dep. Tr. at 39, 188; Ex. A, Pl.'s Answer to Exp.'s Interrog. No. 23)—is simple. Plaintiff has failed to meet her burden of proving mental and emotional distress as a matter of law.

    ***Statutory Damages.*** Unable to show actual damage, Plaintiff may claim entitlement to statutory damages. But to receive such an award, Plaintiff must show that Experian "willfully" violated the FCRA. *See Safeco Ins. Co. of Amer. v. Burr*, 551 U.S. 47, 49, 56-58 (2007) (requiring a showing of "a reckless disregard of a statutory duty" to demonstrate "willfulness" for statutory and punitive damages under the FCRA). Plaintiff has no evidence Experian acted either knowingly or recklessly with regard to Plaintiff when it prepared any report or conducted its reinvestigations. Although Plaintiff's Complaint alleged that Experian acted willfully or "negligently," she produced no evidence of willfulness. There is, in fact, no evidence that Experian failed to do anything the law requires, much less that it did so in the face of an "unjustifiably high risk of harm to Plaintiff. *Id.* at 56-58. In reality, Experian responded immediately and reasonably to Plaintiff's disputes at issue. (*See* Ex. C, Pl.'s Dispute Letters.) Plaintiff thus is not entitled to statutory damages.

**B.     Whatever Damages Plaintiff May Have Suffered Were Not Caused By Experian**

Even if Plaintiff had proved actual or statutory damages, however, that would not be enough.  She would still need to put forward evidence sufficient to entitle a jury to find that Experian was the cause of those damages.  She has failed to meet that burden.  Instead, the record demonstrates that Plaintiff's harm was caused by her own negligence.

It is well-settled that Experian cannot be held liable for harm it did not cause.  The FCRA is not a strict liability statute.  *See Henson v. CSC Credit Services*, 29 F.3d 280, 284 (7th Cir. 1994).  So, if a consumer discovers an inaccuracy on her credit report, the FCRA gives the credit reporting agency an opportunity to reasonably reinvestigate the error and correct it before any liability attaches.  *See Anderson v. Trans Union*, 405 F. Supp. 2d 977, 985 (W.D. Wis. 2005) ("The Fair Credit Reporting Act is not a strict liability statute. Therefore, defendant was not required to take any action to correct plaintiff's credit report until [plaintiff] provided notice of the alleged error." (citations omitted)).  As such, damages under the Act for alleged noncompliance can only be awarded after a consumer reporting agency has received notice of the dispute and has had a reasonable opportunity to reinvestigate.  *See Reed v. Experian Info. Solutions*, Inc., 321 F. Supp. 2d. 1109, 1115 (D. Minn. 2004) ("[A] CRA cannot be held liable for a denial of credit occurring before it has been put on notice that its report is disputed."); *see also Henson v. CSC Credit Serv.*, 29 F.3d 280, 285 (7th Cir. 1994) ("a credit reporting agency is not liable under the FCRA for reporting inaccurate information . . . absent prior notice from the consumer that the information may be inaccurate").

Accordingly, damages are improper here, because Plaintiff's alleged injuries occurred <u>before</u> she ever disputed any of the alleged inaccurate information with Experian.  It is only <u>after</u>

Experian received notice of Plaintiff's disputes and had a reasonable opportunity to reinvestigate, that any actionable injury resulting from Experian's conduct could have arisen.  *See Anderson v. Trans Union*, 405 F. Supp. 2d 977, 985 (W.D. Wis. 2005)  For instance, although she was aware of the First Premier Bank account (and on others) from her September 8, 2009 disclosure, Plaintiff did not dispute the information on her Experian disclosure until January 29, 2013.  By not providing Experian with notice of any disputes she had with her credit report, Thach deprived Experian of an opportunity to conduct a reasonable reinvestigation of her dispute pursuant to FCRA standards until after that time.[7]  *See Reed*, 321 F. Supp. 2d. at 1115.  As such, Experian cannot be held liable for any alleged damages Plaintiff incurred prior to her January 29, 2013 dispute, as it had no possible way of knowing about the alleged inaccuracy.

Plaintiff, in bringing this suit, seeks to hold Experian liable for the alleged harms that occurred prior to Experian receiving any notice of her disputes.  In Plaintiff's mistaken view of the FCRA's dispute processing requirements, Experian must predict what credit information consumers might dispute, conduct a *sua sponte* reinvestigation of that information, and address it. Unfortunately for Plaintiff, the FCRA does not require Experian to be "clairvoyant" in its reinvestigation of consumer's disputes.  Under the Act's proper view, the reinvestigation requirement is triggered only after the consumer reporting agency has received notice of a consumer's dispute.  *Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 474 (2d Cir. 1995);

---

[7] Plaintiff has not experienced any post-dispute adverse action, either: she has not applied for another home mortgage—or any other credit for that matter—since she first disputed the accounts in January 2014 and after the First Premier accounts were removed from her credit report in May 2014.  (*See* Ex. B, Pl's Dep. Tr. at 199:3-6; Ex. A, Pl.'s Answer to Exp. Interrog. No. 9.)

*Podell v. Citicorp Diners Club, Inc.*, 112 F.3d 98, 104 (2d Cir. 1997) (reinvestigation duty arises only by a direct request from the consumer).  Indeed, as one district Court observed,

> The statute requires that a consumer notify a CRA of the existence and nature of a dispute for an obvious reason:  Without notice of a consumer's dispute, including an explanation of why a consumer believers his or her report is inaccurate or incomplete, a CRA generally would not know what information to reinvestigate, how to reinvestigate it, or whether upon reinvestigation the information is indeed accurate or incomplete.

*Petty v. Equifax Credit Info. Servs.*, No. 10-694, 2010 WL 4183542,at *3 (D. Md. Oct. 25, 2010).

Plaintiff, by contrast, has slept on her rights.   Concerning her § 1681e(b) inaccuracy claims, §  1681(p)'s applicable two-year statute of limitations had already expired on them.  Blackwell v. Capital One Bank, No. 606-066, 2008 WL 793476, at *2-3 (S.D. Ga. Mar. 25, 2008) (finding two year limitations period applicable, and running from the date when plaintiff received a response to her dispute).  As such, Plaintiff discovered (or reasonably should have discovered) these inaccuracies when Experian sent her credit report, (*see* Ex. D, Experian's Produc. EXPTHACH_0000245-62), to her, which included the two First Premier Bank accounts (among others) that she now claims are not hers.  But, even if those claims were not time-barred, Plaintiff's § 1681e(b) claims are still precluded, because Plaintiff's alleged damages occurred prior to their being any notice to Experian that there was a potential inaccuracy on any of the now disputed accounts.

In short, Experian's conduct fully complied with the FCRA.  Once Plaintiff actually disputed information on her accounts, (Compl., ECF No. 1, at ¶¶ 30, 34.)  Experian received notice of it and promptly reinvestigated her disputes.  Upon concluding its reinvestigation, Experian notified Plaintiff of its investigation results in a mailing dated March 14, 2014, (*see*

-21-

Compl., ECF No. 1, at ¶ 33.)  Therefore, as a matter of law, no claim for damages here can

obtain, because Plaintiff's alleged credit reporting injuries predate any dispute she filed with

Experian, and once Plaintiff did properly dispute these items, Experian reasonably reinvestigated

them as required by the FCRA.

**CONCLUSION**

For the foregoing reasons, Experian is entitled to summary judgment as a matter of law

on all of Plaintiff's FCRA claims against Experian.  Experian respectfully requests that the Court

grant Experian's Motion for Summary Judgment.  A proposed order accompanies this Motion.

Dated:  September 5, 2014                          Respectfully submitted,

                                                  */s/ Joseph W. Clark*

                                                  Joseph W. Clark (VSB No. 42664)
                                                  JONES DAY
                                                  51 Louisiana Avenue, NW
                                                  Washington, DC  20001
                                                  Tel: 202.879.3697
                                                  Fax: 202.626.1700
                                                  jwclark@jonesday.com

                                                  *Counsel for Defendant Experian Information
                                                  Solutions, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 5th day of September, 2014, I filed a copy of the foregoing

with the Court via the CM/ECF system, causing it to be served on all registered users, including

the following counsel of record:

Leonard Anthony Bennett
Susan M. Rotkis
CONSUMER LITIGATION ASSOCIATES
763 J Clyde Morris Boulevard
Suite 1A
Newport News, VA 23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email: lenbennett@clalegal.com
Email: srotkis@clalegal.com

*Counsel for Plaintiff*

Kristi Cahoon Kelly
Andrew Joseph Guzzo
KELLY & CRANDALL, PLC
4084 University Drive
Suite 202A
Fairfax, VA 22030
Telephone: (703) 424-7576
Facsimile: (703) 591-0167
Email: kkelly@kellyandcrandall.com
Email: aguzzo@kellyandcrandall.com

*Counsel for Plaintiff*

John Willard Montgomery, Jr., VSB #37149
MONTGOMERY & SIMPSON, LLLP
2116 Dabney Rd., Suite A-1
Richmond, VA 23230
Telephone: (804) 355-8744
Facsimile: (804) 355-8748
Email: jmontgomery@jwm-law.com

John Anthony Love
Ian E. Smith
KING & SPALDING
1180 Peachtree St. NE
Atlanta, GA 30309-3521
Telephone: (404) 215-5725
Facsimile: (404) 572-5100
Email: Tlove@kslaw.com
Email: Iesmith@kslaw.com

*Counsel for Defendant Equifax Information
Services, LLC*

*/s/ Joseph W. Clark*

Joseph W. Clark (VSB No. 42664)
JONES DAY
51 Louisiana Avenue, NW
Washington, DC  20001
Tel: 202.879.3697
Fax: 202.626.1700
jwclark@jonesday.com

*Counsel for Defendant Experian Information
Solutions, Inc.*