**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

THANH THACH,

    Plaintiff,

v.                                                                    Case No.: 3:14-cv-00070-HEH

EQUIFAX INFORMATION SERVICES LLC,
EXPERIAN INFORMATION SOLUTIONS,
INC., BRYANT STATE BANK, CREDIT ONE
BANK, COMENITY BANK, FIRST PREMIER
BANK, and LVNV FUNDING,

    Defendants.

**MEMORANDUM IN SUPPORT OF**
**DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S**
**MOTION FOR SUMMARY JUDGMENT**

Defendant, Equifax Information Services LLC ("Equifax"), submits the following Memorandum in Support of its Motion for Summary Judgment. For the reasons stated below, Equifax's motion should be granted.

## INTRODUCTION

This is a case under the Fair Credit Reporting Act, 15 U. S.C. 1681, *et seq*. ("FCRA"). Plaintiff alleges that she applied for a mortgage in August of 2012 and discovered a number of accounts on her credit report that did not belong to her. In her Complaint, Plaintiff alleges that Equifax has mixed her credit file with another person. She has provided absolutely no evidence of this, however, and, as discussed below, this is more likely a case of family identity theft in which fraudulent activity resulted in unauthorized accounts appearing on Plaintiff's credit file.

After Plaintiff became aware of the issue, she retained her current counsel, and her counsel, with Plaintiff's assistance, drafted three dispute letters for Plaintiff to send to Equifax

under Plaintiff's signature between September of 2012 and June of 2013.  Plaintiff never made any disputes with Equifax prior to September 2012.  Plaintiff was never denied credit based upon her Equifax credit report at any time before August 2012.

Equifax conducted a reinvestigation of each of Plaintiff's three disputes and reported the results of each to Plaintiff.  In her first dispute, Plaintiff disputed a total of 22 accounts and ten remained following Equifax's reinvestigation.  Of these ten, every single one was reported by the data furnishers to contain Plaintiff's exact Social Security number and various other identifying information.  Some of the accounts were verified based on names and addresses that Plaintiff now alleges do not belong to her, but had never disputed before her three disputes in this case.  Over the course of her second and third disputes, the number of disputed items was reduced to six and all six data furnishers for those accounts reported Plaintiff's Social Security number and former names and addresses that Plaintiff had never disputed with Equifax.  Based on these facts, Equifax conducted a reasonable reinvestigation under the FCRA and is entitled to summary judgment.

Equifax is also entitled to summary judgment on Plaintiff's claims for damages.  She claims that she was denied a mortgage on two occasions in August of 2012 – prior to making any disputes with Equifax – but never completed an application with the two mortgage companies and never received an adverse action letter notifying her that she had been denied.  Accordingly, Plaintiff's alleged mortgage "denials" were really just abandoned efforts and Equifax is entitled to summary judgment.

For these reasons, and as discussed further below, Equifax's motion should be granted.

## STATEMENT OF UNDISPUTED FACTS

### I.   PLAINTIFF

1.      Plaintiff was born in Vietnam and moved to the United States around age seven. She turned 18 years old in the year 2000.  (Deposition of Thanh Thach ["Thach Dep."] at 4:16-20, 41:18-20, attached as Exhibit A.)[1]

2.      Plaintiff's full name is Thanh Cham Thi Thach.  She resides at 2926 Monticello Drive in Falls Church, Virginia, 22042, and was born in 1982.  The last four digits of Plaintiff's Social Security number are 1850.  (Thach Dep. at 4:14-15, 11:10-12, 107:15-17.)

3.      Plaintiff never requested a copy of her Equifax credit file, nor made any disputes with Equifax concerning its contents from 2000 until September 2012.  (*Id*. at 4:21-6:11, 41:18-20, 132:6-18.)

4.      During this time, Plaintiff was able to open four credit card accounts and obtain a car loan with no problems.  (*Id*. at 10:13-11:9.)

5.      In August of 2012, Plaintiff sought a mortgage loan.  She asked a friend, Mr. Ho, for a referral, and he informed her about C&F Mortgage.  An employee of C&F called Plaintiff and Plaintiff provided verbal authorization for C&F to pull her credit report.  She did not complete a an application.  (*Id*. at 53:6-11, 55:22-56:7.)

6.      The C&F employee verbally advised Plaintiff that she would not qualify for a loan.  Plaintiff never had any further communications with CNS and did not receive an adverse-action letter from C&F.  (*Id*. at 56:8-57:10.)

7.      After her experience with C&F, Plaintiff went to McLean Mortgage, which was near her home, to inquire about obtaining a mortgage.  She did not complete a loan application.

---

[1] At the time of this filing, Equifax has only a rough draft of Plaintiff's deposition and will supplement with the final upon receipt.

(*Id*. at 57:14-58:23, 133:10-14.)

8.      McLean Mortgage obtained a "tri-merge" credit file for Plaintiff and provided Plaintiff with a copy.  (*Id*. at 58:12-16, 131:13-20.)

9.      According to Plaintiff, the loan officer advised her that that McLean Mortgage could not assist her based upon the information in her credit file.  (*Id*. at 58:12-20.)  Plaintiff never received an adverse action letter from McLean Mortgage.  (*Id*. at 101:12-102:15.)

## II.     EQUIFAX INFORMATION SERVICES LLC

10.     Equifax is a consumer reporting agency ("CRA") as defined by the federal Fair Credit Reporting Act, the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x. (Declaration of Vicki Banks ["Banks Decl."] ¶ 3, attached as Exhibit C.)

11.     As a CRA, Equifax maintains credit files for more than 200 million consumers in the United States, including separate files for Plaintiff and her mother, Chia Thach.  (Banks Decl. ¶¶ 3, 16.)

12.     Equifax maintains reasonable procedures designed to assure the maximum possible accuracy of consumer reports it provides to its subscribers and to correct inaccuracies brought to its attention.  (*Id*. ¶ 4.)

### A.     Equifax's Reasonable Procedures For Maintaining Accuracy

13.     Equifax accepts credit information only from those sources of information, referred to as "data furnishers," that Equifax determines to be reasonably reliable based upon the source's reputation in the community, its own investigation, or Equifax's longstanding business relationship with it.  (*Id*. ¶ 5.)

14.     When Equifax receives a request from a company to become a data furnisher and user of Equifax's credit information, Equifax conducts an extensive investigation to ensure that the company is reliable.  (*Id*. ¶ 6.)  Each company must complete an application and sign a

subscriber agreement, which requires the company to certify that it will obtain consumer reports only in accordance with permissible purposes under the FCRA and that it will otherwise comply with all FCRA requirements, including the requirement that it provide accurate information and investigate consumer disputes.  (*Id*. ¶ 7.)

15.     Upon receipt of an application, subscriber agreement, and other related documentation, Equifax's new-accounts department conducts an investigation of the company, which may include an onsite visit, to determine the company's legitimacy and reliability.  (*Id*. ¶ 8.)

16.     Equifax's standard data-furnisher contract requires data furnishers to provide accurate data and to update that data regularly.  (*Id*. ¶ 9.)

17.     Generally, furnishers and other sources of information report credit information and update the credit history of consumers on a monthly basis through bulk transfers of electronic data to Equifax.  (*Id*. ¶ 10.)

18.     Equifax uses a proprietary matching algorithm to match information provided by furnishers to particular consumer files.  (*Id*. ¶ 11.)

**B.     Equifax's Reasonable Procedures For Reinvestigating Disputed Information**

19.     Equifax also maintains procedures designed to help consumers dispute information in their credit files they believe to be inaccurate.  (*Id*. ¶ 13.)

20.     A consumer may contact Equifax to dispute information reporting in his or her credit file by telephone, mail, or through the Internet.  When Equifax receives a dispute from a consumer, it makes a contemporaneous electronic record of the dispute in a system known as "ACIS."  (*Id*. ¶ 14.)  The ACIS record reflects, among other things, when the dispute was received, how it was received, the steps taken in the reinvestigation of the dispute, the results of the reinvestigation, and the date the results were sent to the consumer.  (*Id.*)

21.     Upon receipt of a dispute from a consumer regarding the accuracy of information in the consumer's credit file, Equifax's policy is for agents to review and consider all of the relevant information provided by the consumer regarding the nature of the dispute, as well as the contents of the consumer's credit file.  (*Id*. ¶ 15.)

22.     If, upon review of the dispute and the file, Equifax is able to make updates, it will undertake those updates immediately.  (*Id*. ¶ 16.)  This might occur, for example, when a consumer provides Equifax with evidence of a name change.  (*Id*.)

23.     If further investigation of the consumer's dispute is required, Equifax notifies the source of the information and advises it of the consumer's dispute, describes all relevant information, and provides the consumer's account information as it then appears in the consumer's credit file.  (*Id*. ¶ 17.)

24.     Equifax asks the data furnisher to investigate the consumer's dispute and to advise Equifax if the account information is inaccurate.  (*Id*.)

25.     The data furnisher is typically in the best position to investigate a dispute, as it has the records and direct relationship with the consumer.  (*Id*. ¶ 18.)

26.     Communications between Equifax and the data furnisher are generally made through a process wherein Equifax electronically transmits a form called an Automated Consumer Dispute Verification ("ACDV") to the data furnisher.  (*Id*. ¶ 19.)  The ACDV process is an industry standard used by all three of the nationwide consumer reporting agencies (Equifax, Experian, and Trans Union).  (*Id*.)

27.     The ACDV process allows consumer reporting agencies to communicate with data furnishers through use of an array of pre-defined codes and narrative phrases.  (*Id*. ¶ 20.)  The ACDV form also includes a space for Equifax's dispute handlers to describe the dispute in

narrative form. (*Id.* ¶ 21.)

28. This standardized process enhances consistency and reduces misunderstandings, which otherwise would be significant given the large number of disputes processed by Equifax and the other consumer reporting agencies every day. (*Id.* ¶ 20.)

29. When a data furnisher receives an ACDV from Equifax, it is required, both by its contract with Equifax and by the FCRA, to conduct its own investigation and to report the results to Equifax in a timely manner. (*Id.* ¶ 22.) If the data furnisher advises Equifax to delete or otherwise update the account information, then Equifax takes the necessary action and notifies the consumer of the results. (*Id.* ¶ 23.)

30. If the data furnisher states that it has investigated the item but has no changes, Equifax will generally, but not always, make no changes to the credit file. (*Id.* ¶ 24.) Equifax maintains extensive policies and procedures that allow its dispute handlers, under some circumstances, to make changes to the credit file not recommended by the data furnisher. (*Id.* ¶ 25.)

31. Following the completion of its reinvestigation, Equifax sends the consumer a letter (or an e-mail, if requested by the consumer) containing the reinvestigation results, along with a summary of the consumer's rights under the FCRA, including the right to add a consumer statement to the credit file if the consumer disagrees with the results. (*Id.* ¶ 26.)

**C.    Equifax's Reinvestigation's In Response To Plaintiff's Disputes**

32. In this case, Plaintiff, or someone on her behalf, made three disputes with Equifax, each of which arrived by mail. (*Id.* ¶ 28.) Equifax does not have a record of receiving any telephone calls, faxes, or emails from Plaintiff. (*Id.* ¶ 29.)

**1.    The September 4, 2012 Dispute**

33. Plaintiff's first dispute was via a letter dated September 4, 2012, which Equifax

7

received on September 9, 2012. (*Id.* ¶ 30 & Ex. A.) The letter lists 22 accounts and states that the accounts "do[] not belong to me." (*Id.*, Ex. A.) It also states, without further explanation: "Based on the personal information in my report, it is possible you have confused me with another person with a similar name and/or identifying information." (*Id.*)

34. Plaintiff did not identify her mother, or any other individual, as a potential "other person." (*See id.*) Plaintiff also did not dispute any former addresses or former names that appeared on her file at that time, including two addresses in Falls Church (3181 Monticello Drive and 7407 Barley Walk) and the names Chai C. Thach and Pat T. Kaia. (*Id.* ¶ 32; *see also id.* ¶ 35.)

35. Under Equifax's procedures, Equifax's agents were required to review and consider the relevant information provided by Plaintiff. (*Id.* ¶ 34.) One of the disputed accounts (Verizon Virginia) was not in Plaintiff's credit file and therefore required no reinvestigation. (*Id.* ¶ 35(xxi).)

36. Equifax reinvestigated 20 of the remaining 21 disputed accounts. (*Id.* ¶ 35.) With respect to one account, NCO Financial, Equifax inadvertently did not send this account out for reinvestigation. (*Id.* ¶ 35(xxi).)

37. Ultimately, Equifax removed 11 of the disputed accounts from Plaintiff's file, leaving 10 disputed accounts in her credit file. (*See id.* ¶ 35.)

38. The following chart summarizes the identifying information provided by the data furnishers for 11 of the disputed accounts, including the 10 accounts that remained in Plaintiff's file, and compares that information to information provided by Plaintiff in this lawsuit.[2] The

---

[2] The remaining data furnishers did not provide identifying information in their ACDV responses. (*See* Banks Decl. ¶ 35.)

chart also provides the date each account was opened and the addresses provided by the furnishers.  (*See id*. ¶ 35.)

| Data Furnisher | Opened | Social Security Number Match | Date of Birth Match | First Name Match | Last Name Match | Address Match |
|---|---|---|---|---|---|---|
| Comenity Bank | 10/01 | √ | Not provided | √ | √ | 7407 Barley Walk<br>3181 Monticello |
| JPMorgan Chase | 07/04 | √ | √ | √ | √ | √ |
| Capital One | 03/05 | √ | √ | | | 3181 Monticello |
| First Premier Bank | 03/05 | √ | √ | √ | √ | 3181 Monticello |
| First Nat'l Bank | 12/05 | √ | | | √ | 3181 Monticello |
| First Premier Bank | 12/06 | √ | √ | √ | √ | 3181 Monticello |
| Bryant State Bank | 12/08 | √ | √ | | √ | 7407 Barley Walk |
| Credit One Bank | 06/09 | √ | Not provided | √ | √ | 7407 Barley Walk |
| Capital One | 10/09 | √ | √ | √ | √ | 7407 Barley Walk |
| LVNV Funding | 09/11 | √ | Not provided | √ | √ | √ |
| LHR, Inc. | 11/11 | √ | √ | √ | √ | √ |

39.     Equifax also added a "Do Not Combine" code to the credit file at this time.  A Do Not Combine code is designed to prevent a consumer's credit file from merging with the credit file of another individual.  (Banks Decl. ¶ 36.)

40.     Equifax sent Plaintiff the results of its reinvestigation along with a summary of her rights under the FCRA, including her right to add a consumer dispute statement to her credit file if she disagreed with the results.  (*Id*. ¶ 37.)  Plaintiff did not ask Equifax to add a consumer statement to her file.  (*Id*. ¶ 38.)

### 1.     The January 29, 2013 Dispute

41.     On February 3, 2013, Equifax received Plaintiff's second dispute letter, dated January 29, 2013, which enclosed a copy of her September 4, 2012 letter.  (*Id*. ¶ 39 & Ex. B.)

42. By this time, only 9 of the original 22 disputed items remained on Plaintiff's credit file (the LHR account had dropped off the file by this time). (*Id*. ¶ 40.)

43. After a second round of reinvestigations, Equifax deleted the NCO Financial account, leaving only 8 disputed accounts. (*See id*. ¶ 41.) Equifax sent Plaintiff the results of the reinvestigation on February 15, 2013, including a copy of her rights under the FCRA. (*Id*. ¶ 42.)

**2.      The June 4, 2013 Dispute**

44. On June 8, 2013, Equifax received Plaintiff's third and final dispute letter, dated June 4, 2013. (*Id*. ¶ 43.)

45. At this time, only 6 of the originally disputed items remained on Plaintiff's credit file. (*Id*. ¶ 44.)

46. Equifax reinvestigated these 6 accounts and did not remove any of them from Plaintiff's file. (*See id*. ¶ 45.) On June 21, 2013, Equifax sent Plaintiff the results of its reinvestigation, including a copy of her rights under the FCRA. (*Id*. ¶ 46.)

47. If Plaintiff had disputed any of the former names or addresses that appeared in her credit file, Equifax would have removed them pursuant to its policies and procedures. (*Id*. ¶ 48.)

48. Likewise, if Plaintiff had requested the addition of a consumer statement to her credit file, Equifax would have added it pursuant to its policies and procedures. (*Id*. ¶ 49.)

**III.     PLAINTIFF'S SISTER, MY TRANG THACH**

49. Plaintiff has an estranged older sister, whose name is My Trang Thi Thach. (Thach Dep. at 49:21-50:11, 72:8-16, 85:17-86:16, 193:9-10.)

50. Business records provided by Credit One Bank include copies of several checks, from 2009, used to make payments on one of the disputed accounts. (Declaration of Ian Smith ["Smith Decl."], attached as Exhibit B, ¶ 5 & Decl. Ex. B at Bates No. EIS-THACH CREDIT ONE BANK-000005 through 000012.) The account (no. *8175) was in Plaintiff's name, with

her Social Security number and date of birth, and an address at 7407 Barley Walk in Falls Church.  (Smith Decl., Ex. B at Bates No. EIS-THACH CREDIT ONE BANK-000004.)  Many of these checks were drawn from the account of an individual named Cuong D. Dao, with an address listed on the checks as 3181 Monticello Drive in Falls Church, Virginia.  (*Id.*)

51.    Business records provided by First Premier Bank, which also held one of the disputed accounts (no. *5887), include copies of checks, from 2007, drawn from My Trang Thach's checking account, with the 3181 Monticello address listed on the checks.  (Bates No. FPB/THACH 000081 through 82.)[3]  The account was in Plaintiff's name.  (*Id.* Bates No. FPB/THACH 000028 through 000046.)

52.    A check from My Trang Thach at the 3181 address also appears in the business records of CorTrust Bank, which held a third disputed account in Plaintiff's name (no. *2984).  (*Id.* at Fax Page 13 of 13; Thach Dep. at 171:18-172:21.)  CorTrust lists the account owner as Plaintiff, with her correct Social Security number and date of birth.  The address for the account is 3181 Monticello Drive.  Trang T. Thach (Plaintiff's sister) is listed as an authorized user.  (Smith Decl., Ex. B at Fax Page 12 of 13.)

## ARGUMENT AND CITATION OF AUTHORITY

### I.    PLAINTIFF'S CLAIMS AGAINST EQUIFAX

Plaintiff alleges that Equifax violated two FCRA provisions – § 1681e(b) and § 1681i(a).  Section 1681e(b) requires CRAs to follow reasonable procedures when preparing consumer reports.  Section 1681i(a) requires reasonable reinvestigations of disputed information.  "The FCRA does not impose strict liability on consumer reporting agencies for inaccuracies in reporting."  *Hill v. Equifax Info. Servs., LLC*, 974 F. Supp. 2d 865, 875 (M.D.N.C. 2013).  "Mere

---

[3] Mytrang Thach's name on the check is listed with her family name first, as Thach Thi My Trang.  (*See* Thach Dep. at 171:18-172:21.)

proof of inaccuracy in a credit report will not suffice" to establish a claim. *Tinsley v. TRW Inc.*, 879 F. Supp. 550, 552 (D. Md.), *aff'd*, 64 F.3d 659 (4th Cir. 1995). The requirement rather is that CRAs follow reasonable procedures. *See*, *e.g.*, *Sepulvado v. CSC Credit Servs., Inc.*, 158 F.3d 890, 896 (5th Cir. 1998).

Plaintiff also brings claims under other subsections of § 1681i(a): Subsections § 1681i(a)(2)(A) and 1681i(a)(4) provide general guidance for reasonable reinvestigations by requiring CRAs, when conducting a reinvestigation, (1) to provide the data furnisher with prompt notice of the dispute and to include "all relevant information regarding the dispute that the agency has received from the consumer" in the notice, and (2) to "review and consider all relevant information submitted by the consumer." Subsection 1681i(a)(5) requires CRAs, once a reinvestigation is complete, to "promptly delete" any item of information from the consumer's credit file that "is found to be inaccurate or incomplete or cannot be verified." 15 U.S.C. § 1681i(a)(5)(A)(i). Subsection 1681i(a)(6) requires CRAs to "provide written notice to a consumer of the results of a reinvestigation . . . not later than 5 business days after the completion of the reinvestigation."

## II.   PLAINTIFF CANNOT ESTABLISH THE REQUIREMENTS FOR A CLAIM UNDER FCRA § 1681e(b).

### A.   Plaintiff Cannot Prove That Equifax's Procedures For Maintaining Maximum Possible Accuracy Of Her Consumer Reports Were Unreasonable.

Section 1681e(b) of the FCRA states: "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." A "consumer report" is a "communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness . . . which is used or expected to be used . . . for the purpose of

serving as a factor in establishing the consumer's eligibility for – (A) credit or insurance to be used primarily for personal, family, or household purposes," or for other purposes not relevant here.  15 U.S.C. § 1681a(d)(1).

Reports provided directly to consumers under 15 U.S.C. § 1681g(a), which are known as "consumer disclosures," are not consumer reports.  *See Wantz v. Experian Info. Solutions*, 386 F.3d 829, 834 (7th Cir. 2004) (no liability under § 1681e(b) "without disclosure [of the consumer's information] to a third party."), *abrogated on other grounds by Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007); *Jackson v. Equifax Info. Servs., LLC*, 167 Fed. Appx. 144, 146 (11th Cir. 2006); *Washington v. CSC Credit Servs.*, 199 F.3d 263, 267 (5th Cir. 2000) ("the actionable harm the FCRA envisions is improper disclosure, not the mere risk of improper disclosures"); *Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 474-75 (2d Cir. 1995) (holding that the plaintiff was not entitled to any damages for pain and suffering simply because plaintiff knew there was inaccurate information on plaintiff's credit report, because that information was not conveyed to any third party); *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991); *Hyde v. Hibernia Nat. Bank in Jefferson Parish*, 861 F.2d 446, 449 (5th Cir. 1988) ("The statute does not allow suit against the credit agency for creating, possessing, or revealing to a consumer credit files containing erroneous information").  Consumer disclosures, which are prepared for and provided directly to consumers, are not "used or expected to be used . . . for the purpose of serving as a factor in establishing the consumer's eligibility for . . . credit or insurance to be used primarily for personal, family, or household purposes."  15 U.S.C. § 1681a(d)(1).

The only consumer reports alleged in this case were provided (through a third party) to the two companies from whom Plaintiff attempted to obtain a mortgage in August 2012.

Whether Plaintiff can maintain a claim under § 1681e(b), therefore, must be determined based on the reasonableness of the procedures used by Equifax to provide information for the September 2012 reports.

The evidence in this case demonstrates that Plaintiff's sister fraudulently used Plaintiff's identifying information – including her name, Social Security number, and date of birth – for more than 10 years. This fraudulent activity by Plaintiff's sister, rather than any action taken by Equifax, resulted in the appearance of numerous accounts in Plaintiff's credit file that Plaintiff did not open. Prior to any notice from Plaintiff's regarding the inaccuracy of these accounts, Equifax had no reason to assume that the accounts were not Plaintiff's. As the chart above demonstrates, the identifying information provided by the creditors was, in almost all cases, very similar to Plaintiff's actual information.

Plaintiff does not—and cannot—offer any evidence demonstrating that Equifax had reason to doubt the accuracy of information it received regarding Plaintiff. To the contrary, Plaintiff's sister—the fraudster—had completely assumed Plaintiff's identity and opened numerous accounts in Plaintiff's name. Equifax had no basis for doubting the accuracy of the information Equifax reported regarding her prior to her initial dispute. For this reason, summary judgment should granted in favor of Equifax on the § 1681e(b) claim.

## III.   PLAINTIFF CANNOT ESTABLISH THE REQUIREMENTS FOR A CLAIM UNDER § 1681i(a).

To establish a claim under § 1681i(a) of the FCRA, Plaintiff must prove, among other things, that Equifax failed to follow reasonable procedures when conducting the reinvestigations and that she incurred actual damages caused by Equifax, or that Equifax willfully violated the law. *See*, *e.g.*, *Wantz v. Experian Info. Solutions, Inc.*, 386 F.3d 829, 833 (7th Cir. 2004).

Summary judgment should be granted in favor of Equifax on the § 1681i(a) claims because Plaintiff cannot satisfy these requirements.

> **A.   Plaintiff Cannot Establish That Equifax's Reinvestigations In Response To Her Disputes Were Unreasonable.**

The ACDV process was reasonable as a matter of law, as numerous federal courts have held. *See, e.g., Okocha v. Trans Union LLC*, 2011 WL 2837594, *7 (E.D.N.Y. Mar. 31, 2011) (ACDV process sufficient where "dispute letters . . . contained little more than categorical disputes as to the validity of the debt"), *aff'd*, 2012 WL 5951626 (2d Cir. Nov. 29, 2012); *see also Dickens v. TransUnion Corp.*, 18 Fed. Appx. 315, 319 (6th Cir. 2001) (affirming summary judgment and upholding use of ACDV process); *Bagby v. Experian Info. Sys.*, 162 Fed. Appx. 600, 606-07 (7th Cir. 2006) (affirming summary judgment based on reasonable use of the ACDV process); *Schmitt v. Chase Manhattan Bank, N.A.*, 2005 WL 2030483, *3 (D. Minn. Aug. 23, 2005) (ACDV process sufficient absent reason to doubt accuracy of data furnisher); *Perry v. Experian Info. Solutions, Inc.*, 2005 WL 2861078, *8 (N.D. Ill. Oct. 28, 2005) (granting summary judgment on reinvestigation claim where consumer reporting agency relied on ACDV process for reinvestigation, where record was "devoid of any evidence that any of Experian's initial sources was unreliable," and where "dispute letters contained mere conclusions, such as '[t]hose are not my accounts,'" and "did not supply information about the alleged identity theft"). Although some disputed items remained in Plaintiff's credit file after the reinvestigations, Plaintiff cannot demonstrate that this resulted from unreasonable procedures, especially in light of the fact that application of those same procedures correctly led to deletion of more than 75% of the disputed accounts.

> **1.** **Plaintiff Cannot Prove That Equifax Failed To Review And Consider All Relevant Information, Or Failed To Provide The Creditors With All Relevant Information.**

Plaintiff premises her reinvestigation claims on subsections 1681i(a)(2) and 1681i(a)(4) of the FCRA, which require CRAs, as part of a reasonable reinvestigation, to provide the data furnisher with "all relevant information regarding the dispute" received from the consumer" and to "review and consider all relevant information submitted by the consumer." Equifax's policies require its agents to review all documents provided by the consumer and to consider that information when conducting the reinvestigation. Plaintiff has no evidence that Equifax's agents failed to follow that policy in this case.

> **B.** **Alternatively, Plaintiff Cannot Maintain A Claim For A Negligent Violation Of FCRA § 1681i(a) Because She Cannot Prove That She Incurred Damages Caused By The Alleged Violation.**

The only economic damages alleged in this case are related to Plaintiff's inability to obtain a mortgage in August 2012. That event occurred *before* Plaintiff sent her first letter to Equifax, on September 4, 2012. Those damages, therefore, could not have been caused by Equifax's alleged failure to conduct reasonable reinvestigations. "Prior to being notified by a consumer, a credit reporting agency generally has no duty to reinvestigate credit information." *Casella v. Equifax Credit Information Services*, 56 F.3d 469, 474 (2d Cir. 1995); *see also Yelder v. Credit Bureau of Montgomery, L.L.C.*, 131 F. Supp. 2d 1275, 1280 (M.D. Ala. 2001) ("Section 1681i(a)(1)(A) requires a consumer to notify a consumer reporting agency directly of the disputed charge in order to invoke the reporting agency's duty to reinvestigate under § 1681i.").

For the reasons stated in by Codefendant Experian Information Solutions, Inc. ("Experian), in the brief accompanying its motion for summary judgment, Plaintiff also cannot establish that she incurred emotional distress damages cause by Equifax. Equifax adopts this portion of Experian's brief and incorporates it herein.

16

**C.  Plaintiff Cannot Prove That Equifax Violated § 1681i(a)(5) By Failing To Remove Disputed Information.**

Section 1681i(a)(5) of the FCRA states:  "If, after any reinvestigation under paragraph (1) of any information disputed by a consumer, an item of the information is *found* to be inaccurate or incomplete or cannot be verified, the consumer reporting agency shall – (i) promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation."  15 U.S.C. § 1681i(a)(5)(A) (emphasis added).  Plaintiff contends that Equifax violated this provision by "failing to delete any information that was the subject of Plaintiff's disputes and that was inaccurate or could not be verified." (Compl. ¶ 78.)  Plaintiff does not allege that Equifax failed to delete any information *it* found to be inaccurate.  Accordingly, summary judgment should be granted on Plaintiff's claim under 1681i(a)(5).

**D.  Plaintiff Cannot Prove That Equifax Violated § 1681i(a)(6) By Failing To Send Reinvestigation Results.**

Plaintiff alleges that Equifax violated § 1681i(a)(6) of the FCRA by failing to send reinvestigation results in response to her January 29, 2013 dispute.  (Compl. ¶ 83.)  Plaintiff states elsewhere in her complaint, however, and also in her deposition, that she received a response from Equifax regarding the January 29 letter.  (*Id*. ¶ 31.)  Plaintiff apparently intended to premise this claim on her September 4, 2012 dispute, which she alleges elsewhere she did not receive.  (Compl. ¶ 28.)  Plaintiff testified at her deposition, in contrast, that she *did* receive a response to her September 4, 2012 dispute.  (Thach Dep. at 68:17-19)  Thus, she cannot prove a violation of § 1681i(a)(6).

## IV.    PLAINTIFF CANNOT ESTABLISH THAT EQUIFAX WILLFULLY VIOLATED THE FCRA.

The FCRA permits awards of statutory and punitive damages only if a consumer reporting agency "willfully fails to comply with any requirement" imposed by the Act. 15 U.S.C. § 1681n(a)(2). Willful misconduct under the FCRA encompasses both intentional and reckless violations of the law. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 68-69 (2007). Reckless misconduct is "conduct violating an objective standard: action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Safeco*, 551 U.S. at 68 (quoting *Farmer v. Brennan*, 511 U.S. 825, 836 (1994)). For a willfulness claim to succeed, the defendant must have engaged in much more than unreasonable conduct; it must have run a risk of violating the law "substantially greater" than the risk associated with mere carelessness. *Id.* at 69. Although some courts have stated that willfulness must generally be determined by a jury, the Supreme Court demonstrated otherwise in *Safeco*, where it held, as a matter of law, that the defendant had not acted recklessly. *See id.* at 71.

A finding of willfulness is not appropriate where the CRA, at worst, committed a series of errors in the reinvestigation process. In *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 241 n.3 (4th Cir. 2009), the Court of Appeals for the Fourth Circuit held that evidence of willfulness was "wholly lacking" in an FCRA identity-theft case where the CRA had made several errors in its handling of the plaintiff's disputes over a period of several years. Similarly, in *Hill v. Equifax Info. Servs., LLC*, 974 F. Supp. 2d 865, 876 (M.D.N.C. 2013), another district court in this the Fourth Circuit granted summary judgment on claims for willful FCRA violations where the plaintiff had "presented evidence of numerous mistakes by Defendant." The plaintiff's "speculation" regarding an alleged systemic problem with the FCRA's procedures were "not sufficient to rebut sworn testimony directed at the actual procedures employed in the

interactions between Plaintiff and Equifax." *Hill*, 974 F. Supp. 2d at 876-77 (citing *Birmingham v. Experian Info. Solutions, Inc.*, 633 F.3d 1006, 1009 (10th Cir. 2011) (affirming summary judgment with respect to willfulness where the plaintiff had "pointed to no described practice that would be a reckless violation of the FCRA" and where there was "no evidence that Experian's specific actions with respect to Birmingham were reckless")).   In *Hill*, the court granted summary judgment in favor of the CRA where the plaintiff might have been able to show that the defendant negligently violated the FCRA, but had "not shown a described practice that would be reckless," no "provided any evidence that Defendant's procedures were unreasonable." *Id.* at 877.

Here, Plaintiff alleges that Equifax has a systemic problem with respect to fill mixing. Equifax denies this assertion, but regardless of the accuracy of Plaintiff's allegations, Equifax's procedures related to file mixing at not relevant in this case.   The evidence demonstrates that Equifax did not combine Plaintiff's credit file with her mother's file, or with any other file. Rather, this is a typical case of identify fraud, where information provided by the fraudster is almost identical to the Plaintiff's actual identifying information.

This leaves Plaintiff solely with the reinvestigations on which to premise an allegation of willfulness.   A CRA's failure to correct a credit report after receiving notice of errors, however, "does not constitute evidence of a willful violation." *Richardson v. Fleet Bank of Mass.*, 190 F. Supp. 2d 81, 86 (D. Mass. 2001).   Indeed, courts have found Equifax's general reinvestigation procedures to be reasonable as a matter of law and have rejected willfulness claims in the process.   As one district court held in granting summary judgment on willfulness:

> As for Equifax's reinvestigation procedures, all three of the major credit reporting agencies have similar ones, and the ACDV approach has been upheld as a matter of law by other courts. . . . Once again, given that Equifax's approach has been upheld as a

matter of law by other courts, Equifax's actions did not constitute a high risk that was known or should have been known. Thus[,] although a jury might find Defendant's investigation and reinvestigation were negligently performed in this instance, there is no indication that the company behaved recklessly, let alone intentionally or knowingly.

*Shannon v. Equifax Info. Services, LLC*, 764 F. Supp. 2d 714, 726 (E.D. Pa. 2011) (citing

numerous cases).  For these reasons, Plaintiff's claims for willful violations of the FCRA should

be dismissed.

## CONCLUSION

For the stated reasons, the Court should grant Equifax's Motion for Summary Judgment.

Respectfully submitted this 8th day of September, 2014.

/s/ John W. Montgomery
John W. Montgomery
VSB #37149
Counsel for Equifax Information Services, LLC
John W. Montgomery, Jr., Attorney, PLC
2116 Dabney Road, Suite A-1
Richmond, Virginia 23230
Telephone:  (804) 355-8744
Facsimile:  (804) 355-8748
Email: jmontgomery@jwm-law.com

## CERTIFICATE OF SERVICE

I certify that on September 8, 2014, I electronically filed the foregoing DEFENDANT EQUIFAX INFORMATION SERVICES LLC'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Leonard Anthony Bennett
Susan Mary Rotkis
Consumer Litigation Associates
763 J Clyde Morris Boulevard
Suite 1A
Newport News, VA 23601
757-930-3660
757-930-3662 (fax)
lenbennett@clalegal.com
srotkis@claslegal.com

Andrew Joseph Guzzo
Kristi Cahoon Kelly
Kelly & Crandall PLC
4084 University Drive
Suite 202A
Fairfax, VA 22030
703-424-7576
703-591-0167 (fax)
aguzzo@kellyandcrandall.com
kkelly@kellyandcrandall.com
Attorneys for Plaintiff

Joseph William Clark
Jones Day (DC)
51 Louisiana Ave NW
Washington, DC 20001
202-879-3939
Fax: 202-626-1700
Email: jwclark@jonesday.com

Timothy James St. George
Troutman Sanders LLP
Troutman Sanders Bldg
1001 Haxall Point
PO Box 1122
Richmond, VA 23219

/s/ John W. Montgomery
John W. Montgomery
VSB #37149
Counsel for Equifax Information Services, LLC
John W. Montgomery, Jr., Attorney, PLC
2116 Dabney Road, Suite A-1
Richmond, Virginia 23230
Telephone:  (804) 355-8744
Facsimile:  (804) 355-8748
Email: jmontgomery@jwm-law.com