**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**THANH THACH,**

        **Plaintiff,**

**v.**                                 **Civil Action No. 3:14-cv-0070 (HEH)**

**EQUIFAX INFORMATION SERVICES,**
**LLC, *et al.*,**

        **Defendants.**

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER**
**MOTION TO STRIKE VICKI BANKS'S DECLARATION**

COMES NOW, the Plaintiff, THANH THACH ("Ms. Thach"), by counsel, and in support of her Motion to Strike the Declaration of Vicki Banks, supplies this memorandum of law.

**INTRODUCTION**

On September 10, 2014, Defendant Equifax Information Services, LLC ("Equifax") filed its Motion for Summary Judgment, which is supported by a declaration from Equifax's employee, Vicki Banks ("Ms. Banks"). (Dkt. No. 121-1). The crux of the declaration presents allegations regarding the manner in which Equifax purportedly "investigated" Plaintiff's disputes. (Banks Decl. ¶¶ 34-46). However, Ms. Banks's testimony on Equifax's purported investigation is inadmissible because Ms. Banks does not have personal knowledge of the purported investigation as reflected by the testimony she provided on August 28, 2014, when she was deposed as a Rule 30(b)(6) witness for Equifax. Worse yet, Ms. Banks's declaration is also contrary and inconsistent with the testimony she provided during her deposition.

First, Ms. Banks's deposition confirms that she does not have personal knowledge regarding the manner in which Plaintiff's disputes were investigated. In fact, it would be virtually impossible for Ms. Banks or any other employee of Equifax to have personal knowledge of its investigation because these investigations are actually conducted by a third-party company, Serco, which is located in India without any involvement of Equifax or its employees. (Ex. 1, Banks Dep. 112:9-15, Aug. 28, 2014).[1] Moreover, Ms. Banks herself confirmed that she did not have an opportunity to speak with any of the individuals in India that actually conducted the investigation. Banks Dep. 58:4-7; 125:1-6. Instead, the "knowledge" that forms Ms. Banks's declaration is based on a one-page document, known as an ACDV response,[2] which contains at least two levels of hearsay, namely: (1) the information transcribed onto the ACDV by the Serco employee; and (2) the information provided in response from the data furnisher. Ms. Banks does not have personal knowledge of the out-of-court actions performed by Serco or the furnisher and this testimony is the precisely the sort of unreliable evidence that the hearsay rule is intended to exclude.

In this case, Plaintiff has sought the depositions of the ACDV operators who

---

[1] Equifax has designated portions of the Banks Deposition as confidential. The parties have met and conferred regarding the use of the deposition testimony on motions. Pursuant to a Protective Order entered in this case, the Defendant is contemporaneously moving to seal the deposition of Vicki Banks.

[2] Equifax relies on the use of automated procedures to process consumer disputes, which entails an exchange of an Automated Consumer Dispute Verification ("ACDV") form between Serco and the entity that furnishes the information appearing on a Equifax credit report. The ACDV-exchange is heavily dependent on the use of standardized codes to communicate the nature of the dispute. For example, in this case, after Plaintiff mailed her three-page dispute letter and supporting documentation to Equifax, it was then relegated to a generalized code by an employee at Serco with access to Equifax's database and forwarded electronically to the data furnisher (*i.e.*, Capital One, Bank of America etc.). The furnisher then responds electronically with no further interaction with Serco and a letter confirming the results is then mailed to a consumer.

handled Plaintiff's dispute letters. On July 14, 2014, Plaintiff served Equifax with a notice of deposition for the depositions of the ACDV operators who processed Plaintiff's disputes. (Ex. 3; Deposition Notice). The ACDV operators' testimony could not be more important because they are the sole individuals who are responsible for investigating credit disputes made to Equifax. The depositions were scheduled for August 7, 2014. *Id*. However, Equifax refuses to produce the ACDV operators who processed Plaintiff's disputes. (*See* Pl.'s Mot. Compel at 3-6) (Dkt. No. 88). Instead, Equifax took the position that it cannot produce the ACDV operators because they are not actually employees of Equifax, but rather are employees of Serco, whom Equifax claims to have no control over. (*See* Def.'s Opp. Mot. Compel at 7) (Dkt. No. 99) ("It is undisputed that ten of the 12 individuals who handled Plaintiff's disputes are not employed by Equifax. Nor are the ten individuals under Equifax's control. It should be self-evident that parties to litigation cannot be compelled to bring non-party individuals (i.e., non-employees) to deposition.").[3] Equifax maintains this position even though even though Section 3.9 of its contract with Serco states "in any event that Equifax commences or is engaged by a third party in a lawsuit with respect to the Services, [Serco] shall provide Equifax access to all directly relevant provider employees and subcontractors for interviews and depositions and the like." (Ex. 2; *Tamblay*, Motion to Compel Hr'g Tr. 2:13-3:22, Aug. 29, 2014, verbatim reading into the record Section 3.9 of the Equifax/Serco contract). Thus, on August 15, 2014, Plaintiff filed a motion to compel the depositions of the ACDV operators, which was ultimately resolved after this Court heard oral argument on a similar motion in the Alexandria Division in a different case pending against Equifax. *Tamblay*

---

[3] The two other employees conducted post-litigation investigations only after suit was filed.

*v. Equifax Info. Servs.*, Case No. 1:14-cv-00130 (LO/IDD) (Dkt. No. 71).

In *Tamblay*, Judge Davis ordered Equifax to make a written request to Serco to produce its employees who conducted the investigations of the plaintiff's disputes pursuant to the vendor agreement between Equifax and Serco. *Tamblay*, Motion to Compel Hr'g Tr. 12:7-12, Aug. 29, 2014 ("But you surely have the ability to instruct Serco to produce them. And that's exactly what this Court is going to order you to do, instruct Serco to voluntarily produce these ACDV operators for purposes of a deposition without the need for a subpoena. They may not think this contract is lucrative enough and may say, we're not going to listen to you. Well, if that's case, then the plaintiff has another option. But before we get to that option, you're going to instruct them to produce them.").

This same issue was pending before the Court and after the *Tamblay* order, Equifax represented that it would "ask the third-party employer of those ACDV operators, Serco, to make available for deposition the employees that handled Plaintiff's disputes that are at issue in this case." (Dkt. No. 107). Despite multiple requests from Plaintiff regarding Equifax's compliance with the Order, Equifax has yet to produce the ACDV operators or even inform Plaintiff of the status of their request. (Exs. 4 & 5; email correspondence from Plaintiff's counsel requesting updates on the status of depositions). Equifax's refusal to produce the ACDV operators should result in the missing witness inference that the ACDV operators testimony would be unfavorable to Equifax.[4] *Norfolk*

---

[4] See, e.g., *United States v. Hines,* 470 F.2d 225, 230 (3d Cir.1972) ("The applicability of a 'missing witness' inference is based on the simple proposition that if a party who has evidence which bears on the issue fails to present it, it must be presumed that such evidence would be detrimental to his cause."); *Mattocks v. Daylin, Inc.*, 78 F.R.D. 663, 668 (W.D. Pa. 1978) *rev'd on other grounds,* 611 F.2d 30 (3d Cir. 1979) (The Court charged: "The only inference that may be drawn is when it has been brought out in the

*& W. Ry. Co. v. Transp. Commc'ns Int'l Union*, 17 F.3d 696, 702 (4th Cir. 1994)(holding that "[t]he drawing of an adverse inference against a party who fails to come forward with relevant evidence within its control is a reasonable and well-recognized evidentiary rule.")(citations omitted); *accord Scott v. Watsontwon Trucking Co., Inc.*, 533 Fed. Appx. 259, 261 (4th Cir. 2013)(unpublished)(applying Virginia law, but nonetheless finding generally that it is a proper instruction that a jury may infer the unexplained failure to call an important witness means that the testimony would be unfavorable to the party who failed to produce the witness).

Not only is the declaration outside of Ms. Banks's personal knowledge, but it is also contrary and/or inconsistent with her deposition testimony. For example, Equifax now claims in its motion for summary judgment that Equifax never determined that any of the post-dispute information in the Plaintiff's credit report was inaccurate and should be removed. (Dkt. 124 at 17). However, this assertion is contrary to Ms. Banks's deposition testimony, where she admits that several of the accounts should have been removed from Plaintiff's credit reports. Banks Dep. 150:2-25 ████████████ ████████████████████████████████ Banks Dep. 176:18-23 ████████████████████████████████ ████████████ *Compare* with Banks Decl. ¶ 35(xvi). The assertions in Ms. Banks's declaration also contradict her deposition testimony on the two other factual positions, namely, (1) Equifax's purported policies and procedures for investigating

---

(continued…)

evidence that there is some person who has some information that may be relevant here and that person is in control of or under the supervision of any party here. Then, the failure to produce that witness may result in an inference drawn by the jury that that witness' testimony would be unfavorable to the party who could have called him.").

disputed information in a consumer's file; (2) the process by which Equifax vets its subscribers before they may become a "data furnisher". (Dkt. No. 121-1). Although these factual allegations are secondary in nature to her declaration testimony regarding the manner in which Plaintiff's disputes were investigated, these statements nonetheless contradict her deposition testimony. Equifax's effort to patch up Ms. Banks's deposition testimony runs afoul of the established rule that a party "is not permitted to create a disputed issue of fact by simply contradicting her own prior testimony." *See Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir.1984) ("A genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct.").

Thus, as more fully explained below, the Court should strike Ms. Banks's declaration regarding the ACDV exchange because it is not based on her personal knowledge. Also, the Court should refuse to consider this evidence based on Equifax's failure to comply with its representations to the Court and the Court's Order resolving Plaintiff's Motion to Compel based on this representation. (Mot. Compel Order dated September 8, 2014, at Dkt. No. 117). In addition, the Court should also strike the portions of Ms. Banks's declaration that contradicted her prior testimony.

## **STANDARD OF LAW**

Federal Rule of Civil Procedure 56(c)(4) provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Similarly, Federal Rule of Evidence 602 further requires that "a witness may not testify to a matter unless evidence is introduced

sufficient to support a finding that the witness has personal knowledge in the matter." Federal Rule of Evidence 1101 provides that the Federal Rules of Evidence apply to all proceedings before the United States district courts, which would include a motion for class certification. *See Lewis v. First Am. Title Ins. Co.*, 265 F.R.D. 536, 544 (D. Idaho 2010).

The Fourth Circuit has routinely held that affidavits that do not meet the requirements of Rule 56 may be disregarded by the trial court and even stricken. *See, e.g., Mascone v. Am. Physical Soc'y, Inc.*, 404 F. App'x 762, 765 (4th Cir. 2010); *Evans,* 80 F.3d at 962; *Cline v. Harmon*, 2012 WL 3822189, at *2 (S.D.W. Va. Sept. 4, 2012). The spirit of the Federal Rules of Civil Procedure, the Federal Rules of Evidence, as well as case law relating to this issue, demand that affidavits and declarations be made on personal knowledge regardless of the stage of litigation in which they are presented and evaluated.  Those that are not based upon personal knowledge, are not admissible. Therefore, for the reasons discussed below, the Court should strike the declaration of Ms. Banks, whose testimony and evidence is unreliable.  *Souter v. Equifax Info. Servs.*, Civ. No. 3:10CV107, at 6-18 (E.D.Va. April 8, 2014)(Doc. 184.)  Equifax knows that its declarant has no personal knowledge and that her declaration is in conflict with her testimony. In its exhaustive analysis of the standard to be applied to such a declaration, this court has previously found it appropriate to strike Equifax's declaration because it is unreliable.  *Id*. at 19.

## ARGUMENT

**I.    Vicki Banks's Declaration Regarding the Handling of Plaintiff's Disputes is Not Based on Her Personal Knowledge.**

Section 1681i(a) of the FCRA states that "if the completeness or accuracy of any item of information . . . is disputed by the consumer and the consumer notifies the [consumer reporting] agency directly, . . . the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the dispute information is inaccurate and record the current status of the disputed information, or delete the item. . . ." 15 U.S.C. § 1681i. In its motion for summary judgment, Equifax uses Ms. Banks's declaration in an attempt to establish that Equifax conducted an investigation as required by § 1681i. However, as reflected by her deposition testimony, Ms. Banks does not have any personal knowledge regarding how Equifax investigated Plaintiff's disputes, and, therefore, her statements lack the basic evidentiary requirement that a witness must have personal knowledge of the subject of his or her testimony. Fed. R. Evid. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."); *see also Bond v. Story*, 2011 WL 5599390, at *2 (E.D. Va. 2011) (Lauck, J.) (prohibiting the use of affidavits on a summary judgment motion where the affidavits were not based on the declarant's personal knowledge.); *Souter v. Equifax Info. Servs.*, Civ. No. 3:10CV107, at 6-18 (E.D.Va. April 8, 2014)(Doc. 184)(striking the declaration of Equifax's witness on summary judgment because he did not have personal knowledge of the facts and the declaration was in conflict with his deposition testimony).

Ms. Banks's declaration regarding Equifax's investigation of Plaintiff's disputes is based exclusively on the ACDV exchange between Equifax and the furnishers of the disputed items that appeared in Plaintiff's credit reports. Banks Decl. ¶¶ 34, 41, 45. In each paragraph that discusses the exchange, Ms. Banks's declaration begins by stating

that Equifax sent a particular furnisher an ACDV notice and asked it to verify the account. *See, e.g.*, Banks Decl. ¶ 34(i) ("Equifax sent Comenity Bank an ACDV notice and asked it to verify the account. Comenity Bank responded by verifying the account. . . ."). However, Ms. Banks's deposition testimony confirms that her statements regarding the ACDV exchange are not based on her personal knowledge. *See* Banks Dep. 55:4-7. Instead, Ms. Banks's testimony is based ███████████████████████████████ that contains multiple levels of hearsay.

For starters, Equifax did not send an ACDV to Comenity Bank or any of the other furnishers in this case. In fact, Ms. Banks's deposition testimony confirms that not a *single* person from Equifax handled Plaintiff's dispute ███████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ███████████████████████████████████. Banks Dep. 40:1-2. After this process occurred, ████████████████████████████████████████ ████████████████████████████████████████████ ██████████████████████████████ *Id*. at 62:18-23; 70:16-23; 83:22-25.[5] Ms. Banks confirmed that all of Plaintiffs' disputes were handled in this manner and without any participation by an actual employee of Equifax. *Id*. at 112:9-15.[6] Thus, Ms. Banks cannot

---

[5]  Q: In the majority of instances, a consumer who writes and sends a dispute to Equifax's designated post office box in Atlanta, Georgia, that dispute will only be read by somebody at Docufree or some employee of Serco on behalf of Equifax?

   A: That's correct.

[6]  Q: Okay. So the only company besides – before the – you found out about the lawsuit in November of '13, the only company that handled any of the plaintiff's disputes, as opposed to reviewing the back-end ACDV, was Serco or formerly Intellinet, right?

   A: That's correct.

possibly have personal knowledge of the manner in which Plaintiff's disputes were investigated.

Ms. Banks's deposition ███████████████████████████████████████████

████████████████████████████████████ ████████████████████████████

████████████████████████████████████████. *Id.* at 55:4-7.

For instance, Ms. Banks admitted ████████████████████████████████

████████████████████████. *Id.* Ms. Banks further admitted that she did not have any personal knowledge as to whether the Serco employees read Plaintiff's letter prior to transcribing it onto an ACDV. Banks Dep. 124:25; 125:1-6 ("A: No, but they are trained to review the entire document. So, no, I could not sit here and tell you they saw the whole, entire thing."). Indeed, Ms. Banks's personal interaction with the

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████.

*Id.* at 127: 21-25; 128:1-2. Accordingly, Ms. Banks's repeated testimony in her declaration that "Equifax sent an ACDV to [a data furnisher] and asked it to verify the account" is not only false, but it is not based on her personal knowledge because she did not participate in or observe this process, nor is Equifax's business model designed to allow its employees to do so.[7]

---

[7] The fact that Ms. Banks served as the Rule 30(b)(6) witness for Equifax does not give her personal knowledge, even for testimony she provided on behalf of the corporation. Equifax has lost this argument recently in a case before Judge Payne, where the Court concluded "there there is a significant difference between a Rule 30(b)(6) deposition and an affidavit… Rule 30(b)(6) is a rule that applies to *depositions* in which an opposing party is given the opportunity to question a *corporate entity and bind it* for purposes of the litigation. A *declaration,* on the other hand, *is not offered as the testimony of the corporation,* but rather *reflects*—or is supposed to reflect—the *personal knowledge* of the declarant. *Souter v. Equifax Info. Servs. LLC,* 299 F.R.D. 126, 132 (E.D. Va. 2014)

Accordingly, the Court should strike Ms. Banks's declaration regarding Equifax's investigation of Plaintiff's disputes, including Paragraphs 34, 41 and 45 of her declaration and all subparts to these paragraphs.

## II.      Vicki Banks's Declaration Regarding the Handling of Plaintiff's Disputes is Inadmissible Hearsay.

Not only are Ms. Banks's statements not based on her personal knowledge, but they are also inadmissible hearsay. In this litigation and another pending before this Court in the Alexandria Division, Equifax has repeatedly taken the position that the Serco employees are not employees of Equifax, and, therefore, Equifax could not be compelled to produce the ACDV operators. Def.'s Opp'n Mot. Compel at 5-10 (Dkt. No. 99) ("It is undisputed that ten of the 12 individuals who handled Plaintiff's disputes are not employed by Equifax. Nor are the ten individuals under Equifax's control. It should be self-evident that parties to litigation cannot be compelled to bring non-party individuals (i.e., non-employees) to deposition.") (internal citations omitted); *see also Tamblay*, Case No. 1:14-cv-00130 (LO/IDD) (Dkt. No. 71).[8] Unfortunately for Equifax, that means that any documents it seeks to use resulting from Serco's processing of Plaintiff's complaint would constitute inadmissible hearsay. "If the source of the information is an outsider, Rule 803(6) does not, by itself, permit the admission of the business record. The outsider's statement must fall within another hearsay exception to be admissible because it does not have the presumption of accuracy that statements made during the regular course of business have." *Rambus, Inc. v. Infineon Tech.'s AG*, 348 F. Supp. 2d 698, 707

_____

(continued…)

(emphasis in original) (quoting *McDonald v. OneWest Bank, FSB*, 929 F.Supp.2d 1079, 1090 (W.D.Wash. 2013).

(E.D. Va. 2004) (quoting *New York v. Microsoft Corp.*, No. CIV A. 98-1233(CKK), 2002 WL 650047, at *1 (D.D.C. 2002)). Furthermore, "to satisfy Rule 803(6) [and Rule 902(11)], each participant in the chain which created the record—from the initial observer—reporter to the final entrant—must generally be acting in the course of the regularly conduct business. If some participant is not so engaged, some other hearsay exception must apply to that link of the chain." *Rambus*, 348 F. Supp. 2d at 706 (citing 5 Weinstein's Federal Evidence, § 803.08[2] (2d ed. 2004)).

The ACDVs in this case are a perfect example of this double-hearsay issue—also called the "outsider issue" in the *Rambus* case. *See Rambus*, 348 F. at 706 ("There is also another impediment to admissibility that appears in several of the declarations because they address records that, although in the files of the Rule 902(11) declarant's company, are not shown by the declaration to be the records of that company."). Certainly, the ACDVs contain the out-of-court statements of the absent Serco employees who conducted the investigation of the dispute information. All of these statements must be overcome before the ACDVs can be admitted into evidence. Broadly categorizing them as "business records" simply does not overcome all of the levels of hearsay presented by them. Nor are these records the type that the business record exception was envisioned to protect, because they are not inherently reliable. Ms. Banks admitted that she does not have any personal knowledge ███████████████████████████████████

████████████████████████████████████████████████████████

██████████████████. Banks Dep. 55:4-7; 124:25; 125:1-6 ████████████

████████████████████████████████████████████████████████

██████████████████. Thus, Ms. Banks's statements regarding the ACDV processes

and Equifax's handling of Plaintiff's disputes are inherently unreliable and constitute multiple levels of inadmissible hearsay, none of which is subject to any exception.

Even if the ACDVs were actually sent by Equifax, however, Ms. Banks's declaration would still be inadmissible because there is at least a second level of hearsay – the out of court statements of the furnisher. In her declaration, Ms. Banks's describes the responses from each of the furnishers in response to Plaintiff's dispute letters. Banks Decl. ¶¶ 34, 41, 45. For example, Ms. Banks's states that "Comenity Bank responded by verifying the account and reporting that its records had the name Thanh Thach, and Plaintiff's Social Security number. Comenity reported addresses of 7407 Barley Walk and 3181 Monticello Drive in Falls Church VA." *Id*. at ¶ 34(i). Of course, all of this information is hearsay. Ms. Banks's testimony is an out-of-court statement of an employee of Comenity Bank used to convey the idea that the account belonged to Plaintiff, and the purpose of introducing this evidence is to support the conclusion that the account belonged to Plaintiff. Equifax does not have any personal knowledge as to how these furnishers respond to these ACDVs, how the furnishers had Plaintiff's personal identifying information, or how they maintain their records surrounding these disputes, and thus, they constitute multiple levels of inadmissible hearsay, none of which is subject to any exception. Moreover, in the deposition, Ms. Banks confirmed ████████

███████████████████████████████████████████████████

███████████████████████████████████████████. Banks

Dep. 139:20-25; 140:1-2.

Thus, in addition to the lack of personal knowledge, the Court should also strike Paragraphs 34, 41 and 45 of her declaration and all subparts, which are inadmissible hearsay.

**III. Vicki Banks's Declaration is Contradicted by Her Deposition Testimony.**

**1. Ms. Banks Does Not Have Any Personal Knowledge of the Relevant Subscriber Agreements in this Case.**

Equifax also tries to bolster its motion for summary judgment through testimony from Ms. Banks regarding Equifax's subscriber agreements. Banks Decl. ¶¶ 5-9. In sum, Ms. Banks testifies that Equifax conducts extensive investigations (which may include an onsite visit) to ensure that its data furnisher clients are reliable and that each data furnisher is required to sign a subscriber agreement, which requires the data furnisher to certify compliance with all FCRA requirements. *Id*. However, once again, Ms. Banks's deposition confirms that she does not have any personal knowledge of these matters as it relates to the data furnisher *in this case*. Furthermore, Equifax has not disclosed its subscriber agreements as it is required to do under Fed. R. Civ. P. 26(a)(1) and (e) if it plans to rely on such evidence on a hearing, on a motion or at trial. (Ex. 7). Fed. R. Civ. P. 37(c)(1) mandates that undisclosed evidence be excluded. Thus, there is no evidence whatsoever any data furnisher's agreement with Equifax in this case, whether any have certified FCRA compliance, have been vetted by Equifax for accuracy or reliability of its dispute investigations and processes, have had an onsite visit by Equifax, or have been the subject of an extensive investigation by Equifax.

For example, Ms. Banks was asked whether she had "any specific knowledge about Equifax's relationship with any particular subscriber" in plaintiff's file. Banks Dep. 29:23-25; 30:1-5. In response, Ms. Banks confirmed that she only had general knowledge

about subscriber agreements and no knowledge with respect to the particular furnishers in this case.

Rule 30(b)(6) provides a vehicle for streamlining the discovery process. *See, Resolution Trust Corp. v. Southern Union Co., Inc.*, 985 F.2d 196, 197 (5th Cir.1993); *Hooker v. Norfolk Southern Ry. Co.*, 204 F.R.D. 124, 126 (S.D.Ind. 2001); *Starlight International Inc., v. Herlihy*, 186 F.R.D. 626, 638 (D. Kan. 1999) *Dravo Corp. V. Liberty Mut. Ins. Co.*, 164 F.R.D. 70, 75 (D. Neb. 1995).

> The Rule 30(b)(6) designee does not give his personal opinions. Rather, he presents the corporation's "position" on the topic. Moreover, the designee must not only testify about facts within the corporation's knowledge, but also its subjective beliefs and opinions. The corporation must provide its interpretation of documents and events. The designee, in essence, represents the corporation just as an individual represents him or herself at a deposition. Were it otherwise, a corporation would be able to deceitfully select at trial the most convenient answer presented by a number of fingerpointing witnesses at the depositions. Truth would suffer.

*United States v. Taylor*, 166 F.R.D. 356, 361 (M.D. N.C.1996) (citations omitted). Once served with a 30(b)(6) deposition notice, any corporate defendant has the duty to produce people prepared to give complete, knowledgeable and binding answers on behalf of the corporation. *See, Marker v. Union Fidelity Life Ins. Co.*, 125 F.R.D. 121, 126 (M.D.N.C. 1989). The corporate deponent must educate herself as to the matters on which testimony is sought. *Calzaturficia S.C.A.R.P.A. S.P.A. v. Fabiano Shoe Co.*, 201 F.R.D. 33, 35 (D.C. Mass. 2001).

Similarly, the witness must familiarize herself with matters beyond her personal knowledge (*Buyck-Roberson v. Citibank Fed. Savings Bank*, 162 F.R.D. 338, 343 (N.D.Ill. 1995)), and review all available corporate documentation that might bear on the

topics of the deposition (*Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633 639 (D.Minn. 2000); *Bank of New York v. Meridien BIAO Bank Tanzania, Ltd.*., 171 F.R.D. 135, 151 (S.D. N.Y. 1997)).  The limitations of personal knowledge are irrelevant.  *See*, *T & W Funding Co. XII, L.L.C. v. Pennant Rent-A-Car Midwest, Inc.*, 210 F.R.D. 730 (D.C. Kan. 2002) at 733.  In this case, despite notice, the witness was unprepared to testify about either personal or corporate knowledge. She did not supplement or correct her testimony, which would have provided an opportunity for the Plaintiff to re-open the deposition. *Holland v. Cedar Creek Mining, Inc.*, 198 F.R.D. 651, 653 (S.D.W.Va. 2001)(quoting *Lugtig v.Thomas,* 89 F.R.D. 639, 641 (N.D. Ill. 1981) "[t]he witness who changes his testimony on a material matter between the giving of his deposition and his appearance at trial may be impeached by his former answers, and the cross-examiner and the jury are likely to be keenly interested in the reasons he changed his testimony. There is no apparent reason why the witness who changes his mind between the giving of the deposition and its transcription should stand in any better case. (Wright & Miller, Federal Practice & Procedure, § 2118)").  In this case, the Plaintiff was unaware that the corporate designee would offer inconsistent evidence, and thus the proper remedy is to "impeach" new testimony by striking paragraphs 5 through 9 of Ms. Bank's declaration regarding the subscriber agreements because this evidence is not based on her personal knowledge.[9]

### 2. Ms. Banks's Testimony Regarding Equifax's Procedures for Reinvestigation are Contradicted by Her Deposition Testimony.

---

[9] The Rule 30(b)(6) notice to Equifax identified "Equifax's relationship and subscriber contracts with its Co-Defendants" as a topic. (Ex. 6). Despite being on notice of the deposition topics, Ms. Banks was unprepared to testify about Equifax's subscriber relationships in this case. Thus, aside from the fact that Ms. Banks does not have personal knowledge regarding the relevant subscriber agreements in this case, her testimony should also be stricken for Equifax's failure to comply with its discovery obligations.

In addition to providing inadmissible testimony regarding the manner in which Plaintiff's disputes were investigated, Ms. Banks's declaration regarding Equifax's general investigation procedures is also contradicted by her deposition testimony. For example, Paragraph 15 states "[u]pon receipt of a dispute from a consumer regarding the accuracy of information in the consumer's credit file, Equifax's policy is to review and consider all relevant information provided by the consumer regarding the nature of the dispute, as well as the contents of the consumer's credit file." Banks Decl. ¶ 15. However, as explained above, this is not true. ███████████████████████

█████████████████████████████████████████████████████

███████████████████. Banks Dep. 40:1-2. ██████████████████

█████████████████████████████████████. *Id.* After this process occurs, a Serco employee then accessed Equifax's database and creates the ACDV without any participation from Equifax. *See, e.g.*, Banks Dep. 112:9-15. Equifax's complete and utter lack of participation in this process was confirmed by Ms. Banks during the following exchange:

*Id* at 70:17-23; 112:9-15. Thus, as reflected by this testimony, Paragraph 15 of Ms. Banks's declaration is simply false. This same analysis would apply to Paragraphs 17, 19, 20, 21.

Even if Equifax actually performed the investigations, Paragraphs 12 and 17 of Ms. Banks's declaration would still be contradicted by and inconsistent with her deposition testimony, and thus unreliable. Specifically, Paragraph 12 of the declaration states that "Equifax maintains separate credit files for Plaintiff and her mother, Chia Thach. Equifax's records do not reflect that these two files were combined into a single file." Banks Decl. ¶ 12. However, Ms. Banks's deposition confirms otherwise. For example, during the deposition, ████████████████████████████████████ ████████████ Banks Dep. 176:16-23. In response, she testified ███████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████." *Id*. Ms. Banks should now not be able to now change this testimony.

Similarly, Paragraph 17 states "[i]f further investigation of the consumer's dispute is required, Equifax notifies the source of the information and advises it of the consumer's dispute, ***describes all relevant information***, and provides the consumer's account information as it then appears in the consumer's credit file." Banks Decl. ¶ 12 (emphasis added). Aside from the fact that Equifax does not participate in this process whatsoever, Ms. Banks's deposition also confirms that Serco does not "describe all relevant information" in the consumer's dispute, nor did it do so in this case. Instead, as confirmed by Ms. Banks, ████████████████████████████████████████,



. Banks Dep. 171:2-7. In this case, despite Plaintiff's three-page letter and enclosures,

" *Id*.[10] Thus, Paragraph 17 of the declaration is contradicted by Ms. Banks's testimony and should be stricken.

For similar reasons, the Court should also strike Paragraphs 20 and 21 regarding the ability of the Serco employees to describe the dispute in narrative form. While

"—Ms. Banks confirmed

. *Id*. at 136:20-25; 137:1-2.[11] Thus, at best, Paragraphs 20 and 21 are misleading regarding the narrative field.

## CONCLUSION

For the reasons stated herein, the Plaintiff respectfully requests the Court enter an Order striking Paragraphs 5-9, 12, 14-17, 19-21, 34, 35, 41, and 45 of Ms. Banks's declaration because it is unreliable and improper evidence.

Respectfully Submitted,

**THANH THACH**

---



[10]

[11]

By:_____/s/_____
Kristi Cahoon Kelly, VSB #72791
Andrew J. Guzzo, VSB #82170
KELLY & CRANDALL, PLC
4084 University Drive, Suite 202A
Fairfax, VA  22030
(703) 424-7570 – Telephone
(703) 591-0167 – Facsimile
E-mail:  kkelly@kellyandcrandall.com
E-mail:  aguzzo@kellyandcrandall.com

Leonard A. Bennett, VSB # 37523
Susan Rotkis, Esq., VSB #40693
CONSUMER LITIGATION
ASSOCIATES, P.C.
763 J. Clyde Morris Blvd. 1A
Newport News, Virginia 23601
Telephone:  (757) 930-3660
Facsimile:  (757) 930-3662
Email: lenbennett@clalegal.com
Email: srotkis@clalegal.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on the 22nd day of September, 2014, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which sent notification of such filing to the following:

John Anthony Love
Barry Goheen
Ian E. Smith
King & Spalding
1180 Peachtree St NE
Atlanta, GA  30309-3521
E-mail:  tlove@kslaw.com
E-mail:  bgoheen@kslaw.com
E-mail:  iesmith@kslaw.com
*Counsel for Equifax Information Services,*
*LLC*

Joseph William Clark
Daniel D. DeVougas
Jones Day
51 Louisiana Ave NW
Washington, DC 20001
202-879-3939
Fax: 202-626-1700
Email: jwclark@jonesday.com
Email: ddevougas@jonesday.com
*Counsel for Experian Info. Solutions, Inc.*

John Willard Montgomery, Jr.
John W. Montgomery Jr. Attorney PLC
2116 Dabney Rd
Suite A-1
Richmond, VA 23230
(804) 355-8744
Fax: 804-355-8748
Email: jmontgomery@jwm-law.com
*Counsel for Equifax Information Services,*
*LLC*

Timothy James St. George
Troutman Sanders LLP
Troutman Sanders Bldg
1001 Haxall Point
PO Box 1122
Richmond, VA 23219
Email: tim.stgeorge@troutmansanders.com
*Counsel for Experian Info. Solutions, Inc.*

_____/s/_____
Susan Rotkis, Esq., VSB #40693
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd. 1A
Newport News, Virginia 23601
Telephone:  (757) 930-3660
Facsimile:  (757) 930-3662
Email: srotkis@clalegal.com