**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | |
|---|---|
| THANH THACH, ) | |
| ) | Civil Case No. 3:14-cv-00070- |
| Plaintiff, ) | HEH |
| ) | |
| ) | Judge:  The Hon. Henry E. Hudson |
| v. ) | |
| ) | |
| EQUIFAX INFORMATION SERVICES, LLC, ) | |
| *et al*., ) | |
| ) | |
| Defendants. ) | |
| ) | |

## DEFENDANT EXPERIAN INFORMATION SOLUTIONS, INC.'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ................................................................................................ 1

PROCEDURAL HISTORY.................................................................................. 3

EXPERIAN'S RESPONSE TO PLAINTIFF'S STATEMENT OF UNDISPUTED
    FACTS ........................................................................................................ 4

STANDARD OF REVIEW .................................................................................. 9

ARGUMENT ...................................................................................................... 10

I.    Plaintiff Has Not Met Her Summary Judgment Burden To Prove That No
    Reasonable Juror Could Find Experian's Reporting Accurate ...................... 10

    A.    Plaintiff Has No Evidence That Experian Mixed Her Credit File ....... 11

    B.    Plaintiff Has No Evidence Of Identity Theft ...................................... 13

    C.    Plaintiff's Only Evidence—Her Own Testimony—Simply Is Not Credible....... 15

CONCLUSION.................................................................................................... 18

# TABLE OF AUTHORITIES

**Page**

<small>CASES</small>

*Cahlin v. General Motors Acceptance Corp.*,
 936 F.2d 1151 (11th Cir. 1991) ...............................................................11

*Comfort Trane Air Conditioning Co. v. Trane Co.*,
 592 F.2d 1373 (5th Cir. 1979) ................................................................16

*Dalton v. Capital Associated Indus., Inc.*,
 257 F.3d 409 (4th Cir. 2001) .................................................................14

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
 509 U.S. 579 (1993)...............................................................................9

*DiQuollo v. Prosperity Mortg. Corp.*,
 984 F. Supp. 2d 563 (E.D. Va. 2013) ...............................................2, 16

*Hinton v. Trans Union, LLC*,
 654 F. Supp. 2d 440 (E.D. Va. 2009) ...............................................11, 15

*Howley v. Experian Info. Solutions, Inc.*,
 813 F. Supp. 2d 629 (D.N.J. 2011) ...............................................1, 12, 13

*Hughes v. Navy Federal Credit Union*,
 No. 10-1430, 2012 BL 5350, at *14 (E.D. Va. Jan. 04, 2012) ...............16

*Hunt v. Cromartie*,
 526 U.S. 541 (1999)...............................................................................10

*Jackson v. Equifax Info. Servs.*,
 167 Fed. App'x 144 (11th Cir. 2006) ......................................................11

*Laschkewitsch v. Lincoln Life & Annuity Distribs., Inc.*,
 No. 13-315, 2014 BL 257583, at *4 (E.D.N.C. Sept. 16, 2014)............16

*McCelland v. Experian Info. Solutions, Inc.*,
 2006 WL 2191973 (N.D. Ill. July 28, 2006)..........................................14

*Perry v. Experian Info. Solutions, Inc.*,
 No. 05-1578, 2005 BL 50637 (N.D. Ill. Oct 28, 2005) .........................14

*Price v. Trans Union LLC*,
 839 F. Supp. 2d 785 (E.D. Pa. 2012) .....................................................12

*Pueschel v. Peters*,
    577 F.3d 558 (4th Cir. 2009) ...................................................................10

*Robinson v. Equifax Info. Servs., LLC*,
    560 F.3d 235 (4th Cir. 2009) ..................................................................15

*Smith v. Auto Mashers, Inc.*,
    85 F. Supp. 2d 638 (W.D. Va. 2000) .......................................................14

*Zotta v. NationsCredit Financial Servs. Corp.*,
    297 F. Supp. 2d 1196 (E.D. Mo. 2003)....................................................11

## STATUTES

15 U.S.C. § 1681a .............................................................................1, 14, 15

15 U.S.C. § 1681c-2 ..................................................................................2, 15

15 U.S.C. § 1681e ...............................................................................11, 14

15 U.S.C. § 1681s-2 ..................................................................................2, 15

## OTHER AUTHORITIES

Fed. R. Civ. P. 56.....................................................................................1, 10

Local Civil Rule 56(B)...............................................................................4, 5

Wright & Miller, *Federal Practice and Procedure*, § 2738 ...........................10, 17, 18

Defendant Experian Information Solutions, Inc. ("Experian"), pursuant to Federal Rule of Civil Procedure 56 and Local Civil Rule 56, submits the following Memorandum in Opposition to Plaintiff's Partial Motion for Summary Judgment, (ECF No. 109 (hereinafter, "Plaintiff's Motion")).

## INTRODUCTION

Painting with an overly broad brush, Plaintiff seeks to tar Experian with the alleged conduct of its co-defendants.  Indeed, although she seeks summary judgment against two separate credit reporting agencies, Plaintiff at least five times refers to these defendants as a singular entity.  (ECF No. 109 at 1, 3 (twice), 4, 16; *see also id.* at 11 ¶ 34 (referring to Experian as Equifax).)  And nowhere in the single page of argument where Plaintiff attempts to apply the law to the facts does she even once address Experian's specific credit-reporting conduct, or cite any piece of record evidence.  (*Id.* at 19.)  For three reasons, Plaintiff has not met her burden to prove that no reasonable juror could find that the information reported by Experian was accurate.

*First*, although Plaintiff broadly claims "Defendants . . . mixed Plaintiff's credit file with other consumers," she provides no evidence—much less undisputed evidence—that *Experian* mixed her credit file.  (*Id.* at 1 (footnote omitted).)  This failure is understandable.  Simply put, Experian did not mix Plaintiff's credit file.  Ever.  Even Plaintiff's own expert agrees.  (*See* Exh. A, Hendricks Dep. Tr., at 155-56, 158.)

*Second*, having failed to prove a mix, Plaintiff changed her litigation strategy.  Although her complaint nowhere mentions identity theft or consumer fraud, Plaintiff now claims that the two First Premier Bank accounts primarily at issue were "the result of identity theft."  (ECF No. 109 at 2 n.2.)  But again, Plaintiff has failed to provide any evidence of identity theft, such as an "identity theft report."  *See* 15 U.S.C. § 1681a(q)(4) (defining "identity theft report" to mean "a

copy of an official, valid report filed by a consumer with an appropriate Federal, State, or local law enforcement agency . . . the filing of which subjects the person filing the report to criminal penalties relating to the filing of false information"). This failure is important—had Plaintiff disputed the First Premier Bank accounts as a result of identity theft, different procedures would have governed both Experian's reporting and the information furnished by First Premier Bank. *See, e.g.*, 15 U.S.C. § 1681c-2(a) (Experian must block reporting of information upon receipt of a valid identity theft report); 15 U.S.C. § 1681s-2(a)(6)(B) (First Premier Bank may not furnish information identified in an identity theft report unless it subsequently knows that the information is correct).

*Third*, the only evidence that Plaintiff does offer to meet her burden is her own testimony. Not only is it well-established that such self-serving testimony cannot suffice to *create* an issue of material fact much less meet Plaintiff's burden, *see DiQuollo v. Prosperity Mortg. Corp.*, 984 F. Supp. 2d 563, at*6 (E.D. Va. 2013), but Plaintiff here has also entirely failed to be credible. To take three examples:

| Plaintiff's Claim | Contradictory Evidence |
|---|---|
| Plaintiff claims not to have known about the disputed accounts until 2012.<br><br>(ECF No. 109 at 2 n.2.) | Most of the disputed accounts were reported on a disclosure that Plaintiff received *in 2009*.<br><br>(ECF No. 112-5.) |
| Plaintiff claims that the GAP credit card account was not hers.<br><br>(ECF No. 109 at 11, ¶ 34; ECF No. 112-2 (Pl.'s Answer to Interrog. No. 16).) | Plaintiff now admits that this account is hers—an admission which also belies her claim of a pristine credit history.<br><br>(ECF No. 109 at 5, ¶ 9; *see* ECF No. 112-11 at Bates No. 0000009 (noting Plaintiff's late payments on this credit card).) |

| Plaintiff's Claim | Contradictory Evidence |
|---|---|
| Plaintiff claims that she never lived at the addresses associated with the First Premier Bank accounts and does not know who did. | Plaintiff's sister has lived at one of these addresses (at least)—which is less than *three hundred feet* from where Plaintiff resides—and Plaintiff never disputed these addresses before, despite their being listed on her consumer disclosures. |
| (*E.g.*, ECF No. 109 at ¶ 39; ECF No. 109-3 at ¶¶ 21-22.) | (*See* ECF No. 112-9; ECF No. 112-5; Exh. D, Google Maps.) |

In sum, Plaintiff—who will bear the burden of persuasion at trial—has not provided sufficient, credible evidence to meet her summary judgment burden.  A reasonable juror could disbelieve Plaintiff's self-serving testimony and make the reasonable inference that Plaintiff elected not to make an identity theft report because she authorized her own sister, who lived nearby, to use her personal information to open the First Premier Bank accounts.  The crucial fact is that these accounts had a 100% match for *three* of Plaintiff's unique personal identifiers—name, date of birth, and social security number.  Plaintiff's Motion for Partial Summary Judgment on the issue of accuracy must be denied.

## PROCEDURAL HISTORY

On January 31, 2014, Plaintiff filed an individual Complaint against two credit reporting agencies—namely, Equifax and Experian—and five consumer data furnishers—namely, Bryant State Bank, Comenity Bank, Credit One Bank, First Premier Bank, and LVNV Funding—in the Richmond Division of the United States District Court for the Eastern District of Virginia, claiming that they were responsible for "derogatory and mismatched sets of credit information" on her credit reports, which "severely reduced [her] credit scores and prohibited her from obtaining a loan."  (*See* ECF No. 1, ¶¶ 4, 5, 35.)

Her Complaint states that she identified 19 allegedly inaccurate tradelines on her Equifax credit report, and she identified 10 allegedly inaccurate trade lines on her Experian credit report.

(*See id.* at ¶¶ 20-21.)  According to Plaintiff, none of these trade lines belong to her. (*Id.* at ¶ 23.)
Further, she contends that Equifax and Experian failed "to reasonably ensure the maximum
possible accuracy of her credit reports and to investigate and correct [her] credit files when she
disputed the inaccuracies." (*Id.* at ¶ 4.)  She also claims, among other things, that Experian's
"[i]nvestigation [r]esults . . . failed to indicate the status of 9 of the accounts" that she disputed in
her first letter of January 2013. (*Id.* at ¶ 34.)  Plaintiff seeks actual damages, statutory damages,
punitive damages, costs, and attorneys' fees from Experian. (*Id.* at ¶¶ 34, 61, 66, 71, 76, 81.)

On March 27, 2014, the Court entered a Scheduling Order, and the discovery phase of
this litigation commenced thereafter. (ECF No. 27.)  Experian filed an Answer to the Complaint
on April 4, 2014, denying any liability on Plaintiff's claims. (ECF No. 28.)

On May 1, 2014, this Court had a pretrial conference with the parties and entered an
order scheduling trial for October 27, 2014. (ECF Nos. 51 & 52.)

Discovery closed on September 2, 2014. (ECF No. 27.)

Equifax Information Services, LLC ("Equifax") and Experian are the only remaining
defendants in this matter.  The five defendant data furnishers have reached settlement agreements
with Plaintiff, and have been dismissed from the action.  Mediation between the parties is
scheduled to take place on September 30, 2014.

**EXPERIAN'S RESPONSE TO PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS**

In accordance with Local Civil Rule 56(B), Experian responds to Plaintiff's Statement of
Undisputed Facts, (ECF No. 109 at 4), insofar as they pertain to Experian.  Further, Experian
herein incorporates its Statement of Undisputed Facts in its Memorandum in Support of Motion
for Summary Judgment, (ECF No. 112), as well as pertinent undisputed facts stated in Equifax's
Memorandum in Support of Motion for Summary Judgment, (ECF No. 124, ¶¶ 49-52 ).  The

below responses correspond to Plaintiff's numbered paragraphs in her Statement of Undisputed Facts.

1.      Experian does not dispute that Plaintiff lives in Falls Church, Virginia.

2.-4.   Experian disputes the fact that Plaintiff ever applied for a $100,000 mortgage loan with C & F Mortgage and that she ever received a denial or any adverse action.  (*See* ECF No. 112-10,  C & F Mortgage Produc., Bates No. 001786 ("Ms. Thach did not proceed with the [mortgage] application process.").)  C & F Mortgage never reviewed an Experian credit report for Plaintiff.  (*See id.* at Bates No. 001776.)

5.      Plaintiff has not "always paid all her debts," hence, the negative information previously found on her credit file.  The two disputed First Premier Bank accounts, for instance—which report Plaintiff's correct first and last name, social security number, and date of birth—were "charged off" because of delinquent payment.  (*See* ECF No. 112-6, First Premier Bank A/CDV Responses, at Bates Nos. 0000021-22.)  Further, the Core Logic Credco Tri-Merge Report that Plaintiff relies on demonstrates that she does not have a pristine credit history.  (*Compare* ECF No. 109 at ¶ 9 (stating as an undisputed fact Plaintiff's ownership of GAP credit card), *with* ECF No. 112-11, Credco Report, at Bates No. 000009 (noting Plaintiff's late payments on GAP credit card)).)

6.-8.   Plaintiff neither completed a mortgage application with McLean Mortgage, nor received a credit denial letter.  (ECF No. 112-3, Pl.'s Dep. Tr. at 57-58, 101-02, 133.)  McLean Mortgage did not review an actual Experian credit report for Plaintiff, but instead (according to Plaintiff) consulted a generic, third-party "tri-merge" credit report.  (*See id.* at 58, 133; *see, e.g.,* ECF No. 112-11, Credco Report.)

9.-10. Personal identifiers on the two First Premier Bank accounts indicate that these delinquent accounts were hers and that Experian accurately reported this information. (*See* ECF No. 112-6, First Premier Bank A/CDV Responses.) Plaintiff was not "very cautious about her credit," as she never checked her credit report regularly, (*see* ECF No. 112-3, Pl.'s Dep. Tr. at 195-96).

### Facts as to Defendant Experian

30.-31. Experian disputes the Credco Report, as not being a true and accurate representation of the information Experian received from furnishers regarding Plaintiff. Tri-merge reports, like Plaintiff's Credco Report, fail to include contextualized information about Experian's credit reporting process. Because the report was not directly obtained from Experian and is combined with other consumer reporting sources, there can be no guarantee that the information reproduced thereon matches the complete information in Experian's credit files for any given consumer. As such, these tri-merge reports, per their own data collection and reporting processes, may create reporting errors independent of any consumer information allegedly obtained from Experian. (*See* ECF No. 112 at 17 n.6 (discussing tri-merge reports).)

32. Experian disputes Plaintiff's allegation that all the accounts listed on the Credco Report did not belong to her. Experian's direct evidence from the furnisher establishes that the two disputed First Premier Bank accounts are indeed hers. (*See* ECF No. 112-6, First Premier Bank A/CDV Responses.)

33. Plaintiff claims that she did not "apply for, use, or authorize anyone else to apply for" the disputed accounts in her name, (*see* ECF No. 112-3, Pl.'s Dep. Tr. at 190-194). However, the uncontroverted evidence shows that her sister, "Thach Thi My Trang" a/k/a Mytrang Thach, was a payor on the allegedly inaccurate First Premier Bank accounts and others,

(*see id.* at 171-72; *see also* ECF No. 112-9 (Plaintiff's sister's checks to First Premier Bank);

ECF No. 112-3, Pl.'s Dep. Tr. at 171-72; Exh. A (Plaintiff's sister's checks to CorTrust Bank).)

34.     Experian did not receive notice of any of Plaintiff's disputes until receipt of her

January 29, 2013 letter.  However, several of these accounts—at least seven—were already listed

on her previously received disclosures.  In particular, Plaintiff knew (or should have known)

about these accounts as of September 2009, when she requested and obtained her consumer

disclosure from Experian.  (*See* ECF No. 112-5, at Bates Nos. EXPTHACH_0000245-62.)  She

also requested and received a consumer disclosure in September 2012, which listed several of the

same accounts.  (*See* ECF No. 112-5, at Bates Nos. EXPTHACH_0000271-88.)  But Plaintiff

failed to dispute any of these accounts until January 2013.  (ECF No. 112-4, Pl.'s Dispute

Letters.)  Plaintiff also did not dispute the name variations and incorrect addresses listed on her

disclosures—namely, the 3181 Monticello Drive, Falls Church, VA 22042 and 7407 Barley

Walk, Falls Church, VA 22042 addresses—though, they too appeared on her September 2009

disclosure.  (*See id.*; ECF No. 112-4, Pl.'s Dispute Letters.)

35.     Upon receipt of Plaintiff's January 29, 2013 dispute letter in early February 2013,

Experian reinvestigated the 13 disputed accounts.  It sent to Plaintiff the results of its

reinvestigation and an updated consumer disclosure in March 2013, stating that several of these

accounts were no longer on her credit file.  (*See* ECF No. 112-5 at Bates Nos.

EXPTHACH_0000291-300; *see also* ECF No. 3, Pl.'s Dep. Tr. at 174-85).)  Notably, Experian's

A/CDVs were returned "verified" on her GAP account and Universal account, and were

"updated" on her disclosure.  (*See* ECF No. 112-5 at Bates Nos. EXPTHACH_0000292

(indicating both GECRB/GAP ("GAP") and UNVL/CITI ("Universal") accounts were "updated";

defining term of art as:  "**Updated** – A change was made to this item; review this report to view

the change.  If ownership of the item was disputed, then it was verified as belonging to you."
(emphasis in original).)  Additionally, Experian's A/CDVs were returned "verified" on the two
First Premier Bank accounts, (*see id.*).  These two accounts "remained" on her credit file, (*see id.*
(defining term of art as:  "**Remains** – This item was not changed as a result of our processing of
your dispute." (emphasis in original)), given that Experian and First Premier Bank had a
complete match (100%) on Plaintiff's first and last name, date of birth and full social.(*See* ECF
No. 112-6, First Premier Bank A/CDV Responses.)  These two accounts, however, were deleted
in May 2014 from Plaintiff's disclosure per First Premier Bank's request.

36.    Experian's produced Transaction Logs demonstrate that Experian had correct
personal identifying information for Plaintiff and that several of the disputed accounts from
Plaintiff's credit file were deleted.  (*See, e.g.*, Exh. B, Exp. Transaction Logs, at Bates Nos.
EXPTHACH_0000077-85 (indicating "Processing Delete" under "Status Description" heading).

37.-38.  On June 3, 2013, Plaintiff sent a second dispute letter to Experian, in which she
disputed only the two First Premier Bank accounts, but provided no new relevant evidence
regarding the alleged account ownership inaccuracies.  (*See* ECF No. 112-4, Pl.'s Dispute
Letters.)  (She did not dispute the GAP account or the Universal account, (*see id.*), in this second
letter.)  As such, Experian did not reinvestigate Plaintiff's dispute, as Experian was not required
to do so by law.  (*See* ECF No. 112 at 13-14.)

39.    The First Premier Bank business records indicate that the two accounts were in
Plaintiff's name, and that account bills and statements were mailed to "3181 Monticello Drive,
Falls Church, Virginia 22042."  (*See generally* ECF Nos. 109-9 (First Premier Bank document
production), 112-9 (account payment checks).)  These business records also demonstrate that

"Thach Thi My Trang," a/k/a Mytrang Thach, was the payor on the two accounts, a person which Plaintiff testified is her sister.  (*See id.*; *see also* ECF No. 112-3, Pl.'s Dep. Tr. at 171-72.)

40.    The report of Evan Hendricks, Plaintiff's expert witness, is not well-supported and would not be admitted here under *Daubert*'s strict standards.  *See generally Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  His report is largely a "copy-paste" project from his other cases, (*see* Exh. C, Hendricks Dep. Tr. at 26-27 (testifying he recycles his reports)), and he makes his living by serving as an expert witness in FCRA cases, (*see id.* at 112).  Portions of his report have not been admitted into the record in the past.  (*See id.* at 25-26.)  He has never contacted or spoken with Plaintiff, (*see id.* at 12, 17-18), Experian, (*see id.* at 12), any furnishers of the disputed information, (*see id.* at 18-21), or C & F Mortgage and McLean Mortgage in preparation of his report, (*see id.* at 12).  Moreover, during his deposition, Hendricks himself noted that there was no perceivable mix between Experian's information on Plaintiff and her mother, with respect to the two disputed First Premier Bank accounts.  (*See id.* at 150-56, 158.)

41.    Experian, as well as codefendants and third parties, have produced substantial evidence rebutting Ms. Thach's testimony that the disputed accounts are mixed.  Plaintiff, on the other hand, has not done so—and her blanket citation to uncontexualized documents ("Exhibits B-Q") are unavailing.  (*See, e.g.*, ECF No. 112-6, First Premier Bank A/CDV Responses (demonstrating that there was no mixed file); *see also* ECF 112-7, First Premier Doc. Produc. (same).)  Plaintiff's presentation of the facts over-relies on self-serving personal testimony. (*See, e.g.*, ECF No. 112-3, Pl.'s Dep. Tr.; ECF No. 109-2, Pl.'s Decl.; ECF No. 1, Compl.; ECF No. 112-2, Pl.'s Answer to Interrogs.)

## STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  But, "in ruling on a motion for summary judgment, the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor." *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) (internal quotations omitted); *see Pueschel v. Peters*, 577 F.3d 558, 563 (4th Cir. 2009) ("this Court 'view[s] all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party.'" (citing  *Battle v. Seibels Bruce Ins. Co.*, 288 F.3d 596, 603 (4th Cir. 2002))).  Moreover, "judges will be quite demanding in their examination of the moving party's papers, but will treat the papers of the party opposing the motion indulgently."  *See* Wright & Miller, *Federal Practice and Procedure*, § 2738 (citing cases).  If the moving party cannot carry its burden, then summary judgment must be denied.  *See Hunt*, 526 U.S. at 549 (citing *Celotex Corp. v. Catrett*, 477 U. S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242 (1986)).

Here, if assumed that Experian's presentation of the material facts are true (and they are), then Plaintiff would be unable to carry her burden that she is entitled to judgment as a matter of law on the issue of Experian's accurate reporting of her credit information.  Further, given the strength of Experian's case, the Court should grant Experian's Motion for Summary Judgment, (ECF No. 111), instead.

## ARGUMENT

### I.   Plaintiff Has Not Met Her Summary Judgment Burden To Prove That No Reasonable Juror Could Find Experian's Reporting Accurate

Plaintiff rightly recognizes that accuracy is a critical element of her § 1681e(b) and § 1681i(a) claims.  (ECF No. 109 at 18.)  Failure to prove an inaccuracy is fatal to both claims.

*See Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991) (holding that the text of § 1681e(b) "implicitly requires that a consumer must present evidence tending to show that a [CRA] prepared a report containing 'inaccurate' information" in order to sustain a claim; but, if the consumer presents no such evidence, then the court need not "inquire further as to the reasonableness of the procedures adopted by the credit reporting agency."); *Jackson v. Equifax Info. Servs.*, 167 Fed. App'x 144, 146 (11th Cir. 2006) ("To establish a prima facie violation of § 1681e(b), a consumer must present evidence that a credit reporting agency's report was inaccurate."); *see also Hinton v. Trans Union, LLC*, 654 F. Supp. 2d 440, 451 (E.D. Va. 2009) (inaccuracy vital to § 1681i claims).

Here, however, the Court need not even reach the issue of accuracy. Not only has Plaintiff failed to prove that Experian acted unreasonably or caused her damages, (*see generally* ECF No. 112), but Plaintiff's claim of an inaccuracy stems largely from a Core Logic Credco Tri-Merge Report. (*See, e.g.*, ECF No. 109 at ¶ 30.) The law is clear that Experian is not liable for the content of this report, which was prepared by a third party. *See Zotta v. NationsCredit Financial Servs. Corp.*, 297 F. Supp. 2d 1196, 1205 (E.D. Mo. 2003) (granting summary judgment to Experian in part because plaintiffs "ha[d] no evidence that an Experian report—as opposed to a trimerge report, which Experian did not issue—was seen by a third party").

If the Court nonetheless elects to reach the issue of accuracy, Plaintiff's Motion for Summary Judgment must be denied for three reasons. First, Plaintiff has provided no evidence that Experian "mixed" her credit file with another consumer. Second, Plaintiff has likewise provided no evidence to substantiate her claim that the two First Premier accounts primarily at issue are the result of identity theft. Finally, all that Plaintiff does provide is her own testimony—testimony that is not credible and may be impeached.

The critical fact, which Plaintiff does not and cannot dispute, is that the First Premier accounts were a 100% match on three of Plaintiff's unique personal identifiers.  A reasonable juror could conclude that Plaintiff authorized her own sister to apply for and use this credit.

### A.  Plaintiff Has No Evidence That Experian Mixed Her Credit File

Plaintiff's summary judgment argument begins with, and turns on, her claim that "Experian . . . mixed Plaintiff's credit file with other consumers."  (ECF No. 109 at 1.)  But this claim is pure fiction.  Experian did not "mix" Plaintiff's credit file.  And Plaintiff has no basis to argue otherwise, as even her own expert admits.

Mixing is a FCRA term of art describing the situation when information concerning two or more different consumers are placed in the same credit file, often because of similar identifying information.  *See, e.g.*, *Price v. Trans Union LLC*, 839 F. Supp. 2d 785, 790 (E.D. Pa. 2012); *Howley v. Experian Info. Solutions, Inc.*, 813 F. Supp. 2d 629, 635-36 (D.N.J. 2011).

Here, Plaintiff has no evidence that Experian mixed Plaintiff's credit file.  Plaintiff's Experian file did not contain any accounts linked to different social security numbers.  Plaintiff does not, and cannot, claim otherwise.  With respect to the two accounts primarily at issue in her case against Experian, the information Experian and First Premier Bank each had for Plaintiff's correct first and last name, date of birth, and full social security number were a one hundred percent (100%) match on both accounts, as established by the A/CDV responses.  (ECF No. 112-6, First Premier Bank A/CDV Responses.)  Experian's documents speak for themselves—the match on these three unique personal identifiers show that these two accounts were Plaintiff's, and were not mixed.[1]

---

[1] The A/CDV responses for other accounts likewise confirms that Experian did not mix Plaintiff's credit file.  For example, GAP's response matched Experian's information with

Rather than examine Experian's specific conduct, Plaintiff attempts to bolster her unfounded claims by conflating Experian with its competitors. Thus, Plaintiff makes the broad claim that "Defendants' own internal documents confirm that Defendants identified many of the accounts in her credit file as mixed," (ECF No. 109 at 3), without identifying *which documents* (from the thousands of pages of discovery), *which Defendant* (there were originally seven), and *which accounts* (from over 50 on her Credco Report).[2] Neither credit reporting agency can or should be held responsible for the alleged conduct of its competitor.

The only evidence Plaintiff presents *concerning Experian* is a Transaction Log and her expert report. But neither support her claim of a mixed file. Plaintiff misreads the Transaction Log. (ECF No. 109-16.) The document, under the "Request" column, actually shows that Experian did have the correct information for Plaintiff's three unique personal identifiers.[3]

More importantly, Plaintiff's expert affirmatively undercuts her claim of a mixed file. Mr. Hendricks's expert report—like Plaintiffs' argument—conflates Experian with its competitors by claiming that "Defendant CRAs continued merging data on Plaintiff and her mother, even after Plaintiff disputed and notified Defendants of the mix." (ECF No. 109-17,

---

(continued…)

respect to Plaintiff's first and last name, social security number, date of birth, and current address. (*See* Exh. E, GECRB/GAP A/CDV Response.)

[2] Plaintiff's lack of specificity between the parties and their conduct is chronic throughout her papers and pleadings. For instance, she testified that she sent essentially the same initial dispute letter to Experian, TransUnion, and Equifax based on the information found in her tri-merge report. (ECF No. 112-3, Pl.'s Dep. Tr. at 16-17, 25.) However, several of these accounts were not even reporting on her Experian credit file at the time of her dispute.

[3] In any event, these logs provide no support for her inaccuracy claims, because these logs reflect that these same accounts were deleted pursuant to her January 29, 2013 dispute letter. (*See, e.g.*, Exh. B, Exp. Transaction Logs, at Bates Nos. EXPTHACH_0000077-85 (indicating "Processing Delete" under "Status Description" heading).)

Hendricks Expert Report at 1, 3.)  But, when asked to examine *Experian* specific records, Mr.

Hendricks acknowledged that there was no evidence of a mix—that Plaintiff's mother's

information did not appear on *Experian's* A/CDV responses from First Premier Bank.  (*See* Exh.

C, Hendricks Dep. Tr. at 158).

Plaintiff's guilt-by-association approach is not the law.  Plaintiff's inability to specifically

show that Experian mixed her credit information and reported it bars her from partial summary

judgment on the inaccuracy issue.[4]  Plaintiff's Motion must be denied.

### B.    Plaintiff Has No Evidence Of Identity Theft

Recognizing that she lacks evidence of a "mixed" file, Plaintiff has now changed her

story.  Putting the same wine into a new bottle, Plaintiff now claims that the First Premier

accounts are not the result of a "mix," but rather "was the result of identity theft."  (ECF No. 109

at 2 n.2.)  But there is no evidence to support Plaintiff's new repackaging effort.

---

[4] Even if Plaintiff were able to prove any inaccurate reporting by Experian (and it cannot), this by itself would not suffice to prove that Experian's procedures and policies were unreasonable. *See, e.g.*, *Perry v. Experian Info. Solutions, Inc.*, No. 05-1578, 2005 BL 50637 (N.D. Ill. Oct 28, 2005) (granting Experian summary judgment on reasonable procedure claim despite conceded inaccuracy).  Indeed, in order to state a prima facie case under 15 U.S.C. § 1681e(b), a plaintiff must prove *all* four elements, namely:  (1) that there is in fact an inaccuracy in his or her credit report; (2) that the consumer reporting agency did not utilize reasonable procedures to ensure the accuracy of the information; (3) damages to Plaintiff; and (4) proximate cause.  *See, e.g.*, *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001) (for elements (1) and (2)); *Smith v. Auto Mashers, Inc.*, 85 F. Supp. 2d 638, 640-41 (W.D. Va. 2000) (for all four elements). As Experian outlines in its Memorandum in Support of Motion for Summary Judgment, (ECF No. 112), Plaintiff cannot prevail on inaccuracy, nor any of these other elements.

At any rate, the facts show that Experian's credit reporting procedures *are reasonable*, because other accounts she disputed that actually appear on her Experian credit report—like her GAP account and Universal account, for example—came back a verified match with Plaintiff's unique personal identifiers.  (*See* Exh. E, GECRB/GAP A/CDV Response; ECF No. 112-5 at Bates Nos. EXPTHACH_0000292 (indicating both GECRB/GAP ("GAP") and UNVL/CITI ("Universal") accounts were "updated"; defining term of art as:  "**Updated** – A change was made to this item; review this report to view the change.  If ownership of the item was disputed, then it was verified as belonging to you." (emphasis in original).)

The FCRA defines "identity theft" to mean "a fraud committed using the identifying information of another person."  15 U.S.C. § 1681a(q)(3).  Further, the FCRA provides specific duties for credit reporting agencies and furnishers to follow ***when a consumer reports an identity theft***.  Initially, the consumer must make a statement, under penalty of perjury, to a law enforcement agency reporting the fraud.  *See* 15 U.S.C. § 1681a(q)(4).  Upon receipt of such an identity theft report, the consumer reporting agency must block the disputed account within four business days and notify the furnisher.  *See* 15 U.S.C. § 1681c-2(a)-(b).  In turn, the furnisher must not provide the information unless it "subsequently knows . . . that the information is correct."  15 U.S.C. § 1681s-2(a)(6)(B).

Here, Plaintiff never claimed identity theft.  She did not mention it in her dispute letters. (*See* ECF No. 112-4, Pl.'s Dispute Letters.)  She did not mention it in her complaint.  (*See* ECF No. 1.)  And she has never produced an identity theft report—even now.  Simply put, Plaintiff cites no evidence of identity theft because there is none.

This failure dooms Plaintiff's claim.  Under FCRA, Experian is not required to address identity theft or consumer fraud on its own initiation, but only after it is requested.  *See Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009) (recognizing that a credit reporting agency "bore no responsibility for the initial theft, but the FCRA makes the company responsible for taking reasonable steps to correct [the consumer's] credit report *once she brought the theft to the company's attention*" (quoting *Sloane v. Equifax Info. Servs., LLC*, 510 F.3d 495, 505-06 (4th Cir. 2007) (emphasis added)); *Hinton v. Trans Union, LLC*, 654 F. Supp. 2d 440, 449 (E.D. Va. 2009) (under the FCRA "a consumer reporting agency" is only required to take action to address consumer fraud or identity theft "*at the request of a consumer* and on receipt of appropriate proof of . . . identity" (emphasis added)).

Despite Plaintiff's belated argument, she has provided no evidence of identity theft. Plaintiff has made no such request with Experian.  Plaintiff's inability to specifically show that any account was the result of identity theft precludes summary judgment on the inaccuracy issue.

### C.    Plaintiff's Only Evidence—Her Own Testimony—Simply Is Not Credible

Lacking evidence of a "mixed" file or of identity theft, Plaintiff falls back on her own uncorroborated testimony that she is not responsible for the disputed accounts.  But a jury could reasonably disbelieve Plaintiff's self-serving testimony, which is contradicted in several respects by the record evidence and Plaintiff's own statements.  Plaintiff does not, and cannot, refute the logical inference that she authorized her own sister—who resided less than three hundred feet away—to open the disputed accounts.  Whether or not this inference is true presents a classic jury question.

Legally, it is well established that a Plaintiff cannot *create* an issue of disputed fact to withstand a *defense* summary judgment motion by relying solely on uncorroborated testimony. *See, e.g.*, *DiQuollo v. Prosperity Mortg. Corp.*, 984 F. Supp. 2d 563 (E.D. Va. 2013) ("The law is well established that uncorroborated, self-serving testimony of a plaintiff is not sufficient to create a material dispute of fact sufficient to defeat summary judgment."); *Hughes v. Navy Federal Credit Union*, No. 10-1430, 2012 BL 5350, at *14 (E.D. Va. Jan. 04, 2012) ("[Plaintiff's] allegations on this point are threadbare, and without more, his *self-serving* opinions are insufficient to establish the presence of similarly situated comparators as a matter of law . . . . summary judgment for the Defendants is proper.") (emphasis added)); *Laschkewitsch v. Lincoln Life & Annuity Distribs., Inc.,* No. 13-315, 2014 BL 257583, at *4 (E.D.N.C. Sept. 16, 2014) ("The Court will not consider 'unsupported assertions,' or 'self-serving opinions without objective corroboration'") (quoting *Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996)); *see also Comfort Trane Air Conditioning Co. v. Trane Co.*, 592 F.2d 1373, 1383 (5th

Cir. 1979) ("Unsupported, self-serving testimony is not substantial evidence sufficient to create a jury question."); Wright & Miller, *Federal Practice and Procedure*, § 2738 ("[B]ecause an affidavit is an ex parte statement by a witness whose demeanor cannot be observed, more reliable forms of proof should be used in place of or to supplement an affidavit when that is possible and appropriate . . . . ex parte affidavits . . . are not admissible at trial . . . .")

If a plaintiff cannot avoid a defendant's summary judgment based on uncorroborated testimony, it follows *a fortiori* that Plaintiff here cannot use the same evidence to secure her own summary judgment on an issue where she will bear the burden of proof at trial. *See id.* ("Since the burden is on the party moving for summary judgment to demonstrate that there is no genuine issue of material fact, the movant also must show that the content of his affidavits would be admissible at trial. *Doubts as to the quality* of the [affidavit's or declaration's] material often *will be resolved against the movant*." (emphasis added)).  After all, a jury would be free to disregard or disbelieve Plaintiff's testimony.

That is especially true here, where a reasonable juror would have ample cause to question Plaintiff's credibility.  In at least three crucial respects, Plaintiff's allegations are simply not believable.

*First*, Plaintiff claims that she "first learned that Defendants were reporting the subject accounts when she applied for a home loan in August 2012."  (ECF No. 109 at 2 n.2.)  But most of the accounts were on a consumer disclosure that Plaintiff received in September 2009—nearly three years earlier.  (ECF No. 112-5.)  A reasonable juror could conclude either that Plaintiff did not dispute the accounts earlier because they were, in fact, accurate, or that Plaintiff was at least contributorily negligent for failing to raise this dispute earlier.

**Second**, Plaintiff claims to have had a pristine credit history and that the GAP credit card account is not hers. (ECF No. 109 at 5, ¶¶ 5, 10; *id.* at 11, ¶ 34; ECF No. 112-2 (Pl.'s Answer to Interrog. No. 16).) But Plaintiff now admits that the GAP credit card is hers. (ECF No. 109 at 5, ¶ 9.) And that credit card has a derogatory payment history. (ECF No. 112-11 at Bates No. 0000009 (noting Plaintiff's late payments on this credit card).) As the standard *falsus in uno, falsus in omnibus* instruction envisions, a reasonable juror could rely on this inconsistency to disregard all of Plaintiff's testimony. Or a reasonable juror could conclude that if Plaintiff forgot about owning the GAP account, she also forgot about authorizing her sister to open the other accounts in dispute.

**Finally**, Plaintiff claims that she is not responsible for the First Premier Bank accounts because she never lived at the addresses associated with them and does not know who did. (*E.g.*, ECF No. 109 at 21, ¶ 39; ECF No. 109-3 at ¶¶ 21-22.) But the record unambiguously reflects that Plaintiff's sister, Mytrang Thach, lived at "3181 Monticello Drive," one of the account addresses, (*compare id.* (check showing "3181 Monticello Drive" address for payor "Thach Thi My Trang"), *with* ECF No. 112-6, First Premier Bank A/CDV Responses (reporting "3181 Monticello Drive" address for accountholder), *and* ECF No. 112-7, First Premier Bank Docs. (same). Moreover, these addresses are located in Plaintiff's same townhouse complex, Kingsley Commons Townhouses, (*see* ECF No. 112-3, Pl.'s Dep. Tr. at 193), and each less than 600 feet away from Plaintiff's current address. (*See* Exh. D, Google Maps.) Most importantly, these addresses were listed on the September 2009 consumer disclosure she obtained from Experian. **Plaintiff never disputed these two addresses with Experian**.

A reasonable juror could conclude that Plaintiff provided financial assistance to a family member who lived close by. That would explain why Plaintiff did not—and still has not—filed

an identity-theft report.  Indeed, it strains credulity to argue that Plaintiff did not know her sister lived a few hundred feet away.

*******

In sum, Plaintiff has no evidence that Experian "mixed" her credit file.  Nor does Plaintiff have any extrinsic evidence that she is the victim of identity theft.  Thus, Plaintiff's claim of inaccuracy depends on a jury believing her own unsupported testimony that her sister stole her identity.  But a far more logical inference is that Plaintiff authorized her sister to open the account.  Regardless, Plaintiff has not met her summary judgment burden to prove that no reasonable juror could find Experian's reporting accurate.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment on inaccuracy should be denied.  Concordantly, Experian's Motion for Summary Judgment, (ECF No. 111), should be granted.  A proposed order denying such relief accompanies this Memorandum in Opposition.

Dated:  September 22, 2014

Respectfully submitted,

*/s/ Joseph W. Clark*

Joseph W. Clark (VSB No. 42664)
JONES DAY
51 Louisiana Avenue, NW
Washington, DC  20001
Tel: 202.879.3697
Fax: 202.626.1700
jwclark@jonesday.com

*Counsel for Defendant Experian Information Solutions, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of September, 2014, I filed a copy of the foregoing with the Court via the CM/ECF system, causing it to be served on all registered users, including the following counsel of record:

Leonard Anthony Bennett
Susan M. Rotkis
CONSUMER LITIGATION ASSOCIATES
763 J Clyde Morris Boulevard
Suite 1A
Newport News, VA 23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email: lenbennett@clalegal.com
Email: srotkis@clalegal.com

*Counsel for Plaintiff*

Kristi Cahoon Kelly
Andrew Joseph Guzzo
KELLY & CRANDALL, PLC
4084 University Drive
Suite 202A
Fairfax, VA 22030
Telephone: (703) 424-7576
Facsimile: (703) 591-0167
Email: kkelly@kellyandcrandall.com
Email: aguzzo@kellyandcrandall.com

*Counsel for Plaintiff*

John Willard Montgomery, Jr., VSB #37149
MONTGOMERY & SIMPSON, LLLP
2116 Dabney Rd., Suite A-1
Richmond, VA 23230
Telephone: (804) 355-8744
Facsimile: (804) 355-8748
Email: jmontgomery@jwm-law.com

John Anthony Love
Ian E. Smith
KING & SPALDING
1180 Peachtree St. NE
Atlanta, GA 30309-3521
Telephone: (404) 215-5725
Facsimile: (404) 572-5100
Email: Tlove@kslaw.com
Email: Iesmith@kslaw.com

*Counsel for Defendant Equifax Information Services, LLC*

/s/ Joseph W. Clark

Joseph W. Clark (VSB No. 42664)
JONES DAY
51 Louisiana Avenue, NW
Washington, DC  20001
Tel: 202.879.3697
Fax: 202.626.1700
jwclark@jonesday.com

*Counsel for Defendant Experian Information Solutions, Inc.*